# UNITED STATES *v.* WHITING POOLS, INC.

No. 82–215.   Argued April 19, 1983—Decided June 8, 1983

BLACKMUN, J., delivered the opinion for a unanimous Court.

*Stuart A. Smith* argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Assistant Attorney General Archer, Wynette J. Hewett,* and *George L. Hastings, Jr.*

*Lloyd H. Relin* argued the cause and filed a brief for respondent.

JUSTICE BLACKMUN delivered the opinion of the Court.

Promptly after the Internal Revenue Service (IRS or Service) seized respondent's property to satisfy a tax lien, respondent filed a petition for reorganization under the Bankruptcy Reform Act of 1978, hereinafter referred to as the "Bankruptcy Code." The issue before us is whether § 542(a) of that Code authorized the Bankruptcy Court to subject the IRS to a turnover order with respect to the seized property.

## I

### A

Respondent Whiting Pools, Inc., a corporation, sells, installs, and services swimming pools and related equipment and supplies. As of January 1981, Whiting owed approximately $92,000 in Federal Insurance Contribution Act taxes and federal taxes withheld from its employees, but had failed

to respond to assessments and demands for payment by the IRS. As a consequence, a tax lien in that amount attached to all of Whiting's property.[1]

On January 14, 1981, the Service seized Whiting's tangible personal property—equipment, vehicles, inventory, and office supplies—pursuant to the levy and distraint provision of the Internal Revenue Code of 1954.[2] According to uncontroverted findings, the estimated liquidation value of the property seized was, at most, $35,000, but its estimated going-concern value in Whiting's hands was $162,876. The very next day, January 15, Whiting filed a petition for reorganization, under the Bankruptcy Code's Chapter 11, 11 U. S. C. § 1101 *et seq.* (1976 ed., Supp. V), in the United States Bankruptcy Court for the Western District of New York. Whiting was continued as debtor-in-possession.[3]

The United States, intending to proceed with a tax sale of

---

[1] Section 6321 of the Internal Revenue Code of 1954, 26 U. S. C. § 6321, provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

[2] Section 6331 of that Code, 26 U. S. C. § 6331, provides:

"(a) Authority of Secretary

"If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property . . . belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. . . .

"(b) Seizure and sale of property

"The term 'levy' as used in this title includes the power of distraint and seizure by any means. . . . In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible)."

[3] With certain exceptions not relevant here, a debtor-in-possession, such as Whiting, performs the same functions as a trustee in a reorganization. 11 U. S. C. § 1107(a) (1976 ed., Supp. V).

the property,[4] moved in the Bankruptcy Court for a declaration that the automatic stay provision of the Bankruptcy Code, § 362(a), is inapplicable to the IRS or, in the alternative, for relief from the stay. Whiting counterclaimed for an order requiring the Service to turn the seized property over to the bankruptcy estate pursuant to § 542(a) of the Bankruptcy Code.[5] Whiting intended to use the property in its reorganized business.

## B

The Bankruptcy Court determined that the IRS was bound by the automatic stay provision. *In re Whiting Pools, Inc.*, 10 B. R. 755 (1981). Because it found that the seized property was essential to Whiting's reorganization effort, it refused to lift the stay. Acting under § 543(b)(1) of the Bankruptcy Code,[6] rather than under § 542(a), the court directed the IRS to turn the property over to Whiting on the condition that Whiting provide the Service with specified protection for its interests. 10 B. R., at 760–761.[7]

---

[4] Section 6335, as amended, of the 1954 Code, 26 U. S. C. § 6335, provides for the sale of seized property after notice. The taxpayer is entitled to any surplus of the proceeds of the sale. § 6342(b).

[5] Section 542(a) provides in relevant part:

"[A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U. S. C. § 542(a) (1976 ed., Supp. V).

[6] Section 543(b)(1) requires a *custodian* to "deliver to the trustee any property of the debtor transferred to such custodian, or proceeds of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case."

The Bankruptcy Court declined to base the turnover order on § 542(a) because it felt bound by *In re Avery Health Center, Inc.*, 8 B. R. 1016 (WDNY 1981) (§ 542(a) does not draw into debtor's estate property seized by IRS prior to filing of petition).

[7] Section 363(e) of the Bankruptcy Code provides:

"Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or

The United States District Court reversed, holding that a turnover order against the Service was not authorized by either § 542(a) or § 543(b)(1). 15 B. R. 270 (1981). The United States Court of Appeals for the Second Circuit, in turn, reversed the District Court. 674 F. 2d 144 (1982). It held that a turnover order could issue against the Service under § 542(a), and it remanded the case for reconsideration of the adequacy of the Bankruptcy Court's protection conditions. The Court of Appeals acknowledged that its ruling was contrary to that reached by the United States Court of Appeals for the Fourth Circuit in *Cross Electric Co.* v. *United States*, 664 F. 2d 1218 (1981), and noted confusion on the issue among bankruptcy and district courts. 674 F. 2d, at 145, and n. 1. We granted certiorari to resolve this conflict in an important area of the law under the new Bankruptcy Code. 459 U. S. 1033 (1982).

## II

By virtue of its tax lien, the Service holds a secured interest in Whiting's property. We first examine whether § 542(a) of the Bankruptcy Code generally authorizes the turnover of a debtor's property seized by a secured creditor prior to the commencement of reorganization proceedings. Section 542(a) requires an entity in possession of "property that the trustee may use, sell, or lease under section 363" to

---

proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection." 11 U. S. C. § 363(e) (1976 ed., Supp. V).

Pursuant to this section, the Bankruptcy Court set the following conditions to protect the tax lien: Whiting was to pay the Service $20,000 before the turnover occurred; Whiting also was to pay $1,000 a month until the taxes were satisfied; the IRS was to retain its lien during this period; and if Whiting failed to make the payments, the stay was to be lifted. 10 B. R., at 761.

deliver that property to the trustee. Subsections (b) and (c) of § 363 authorize the trustee to use, sell, or lease any "property of the estate," subject to certain conditions for the protection of creditors with an interest in the property. Section 541(a)(1) defines the "estate" as "comprised of all the following property, wherever located: . . . all legal or equitable interests of the debtor in property as of the commencement of the case." Although these statutes could be read to limit the estate to those "interests of the debtor in property" at the time of the filing of the petition, we view them as a definition of what is included in the estate, rather than as a limitation.

## A

In proceedings under the reorganization provisions of the Bankruptcy Code, a troubled enterprise may be restructured to enable it to operate successfully in the future. Until the business can be reorganized pursuant to a plan under 11 U. S. C. §§ 1121–1129 (1976 ed., Supp. V), the trustee or debtor-in-possession is authorized to manage the property of the estate and to continue the operation of the business. See § 1108. By permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners. H. R. Rep. No. 95–595, p. 220 (1977). Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business than if "sold for scrap." *Ibid.* The reorganization effort would have small chance of success, however, if property essential to running the business were excluded from the estate. See 6 J. Moore & L. King, Collier on Bankruptcy ¶ 3.05, p. 431 (14th ed. 1978). Thus, to facilitate the rehabilitation of the debtor's business, all the debtor's property must be included in the reorganization estate.

This authorization extends even to property of the estate in which a creditor has a secured interest. §§ 363(b) and (c); see H. R. Rep. No. 95–595, p. 182 (1977). Although Congress might have safeguarded the interests of secured credi-

tors outright by excluding from the estate any property subject to a secured interest, it chose instead to include such property in the estate and to provide secured creditors with "adequate protection" for their interests. § 363(e), quoted in n. 7, supra. At the secured creditor's insistence, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease property as are necessary to protect the creditor. The creditor with a secured interest in property included in the estate must look to this provision for protection, rather than to the nonbankruptcy remedy of possession.

Both the congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate.

### B

The statutory language reflects this view of the scope of the estate. As noted above, § 541(a)(1) provides that the "estate is comprised of all the following property, wherever located: . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U. S. C. § 541(a)(1) (1976 ed., Supp. V).[8] The House and Senate Re-

---

[8] Section 541(a)(1) speaks in terms of the debtor's "interests . . . in property," rather than property in which the debtor has an interest, but this choice of language was not meant to limit the expansive scope of the section. The legislative history indicates that Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title. See 124 Cong. Rec. 32399, 32417 (1978) (remarks of Rep. Edwards); id., at 33999, 34016–34017 (remarks of Sen. DeConcini); cf. § 541(d) (property in which debtor holds legal but not equitable title, such as a mortgage in which debtor retained legal title to service or to supervise servicing of mortgage, becomes part of estate only to extent of legal title); 124 Cong. Rec. 33999 (1978) (remarks of Sen. DeConcini) (§ 541(d) "reiterates the general principle that where the debtor holds bare legal title without any equitable interest, . . . the estate acquires bare legal title without any equitable interest in the property"). Similar statements to the effect that § 541(a)(1) does not expand the rights

ports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad.[9] Most important, in the context of this case, § 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code. See H. R. Rep. No. 95–595, p. 367 (1977). Several of these provisions bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced.[10]

Section 542(a) is such a provision. It requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee.[11] Given the broad scope of the reorga-

of the debtor in the hands of the estate were made in the context of describing the principle that the estate succeeds to no more or greater causes of action against third parties than those held by the debtor. See H. R. Rep. No. 95–595, pp. 367–368 (1977). These statements do not limit the ability of a trustee to regain possession of property in which the debtor had equitable as well as legal title.

[9] "The scope of this paragraph [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action (see Bankruptcy Act § 70a(6)), and all other forms of property currently specified in section 70a of the Bankruptcy Act." *Id.*, at 367; S. Rep. No. 95–989, p. 82 (1978).

[10] See, *e. g.*, §§ 543, 547, and 548. These sections permit the trustee to demand the turnover of property that is in the possession of others if that possession is due to a custodial arrangement, § 543, to a preferential transfer, § 547, or to a fraudulent transfer, § 548.

We do not now decide the outer boundaries of the bankruptcy estate. We note only that Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition. See § 541(b); H. R. Rep. No. 95–595, p. 368 (1977); S. Rep. No. 95–989, p. 82 (1978). Although it may well be that funds that the IRS can demonstrate were withheld for its benefit pursuant to 26 U. S. C. § 7501 (employee withholding taxes), are excludable from the estate, see 124 Cong. Rec. 32417 (1978) (remarks of Rep. Edwards) (Service may exclude funds it can trace), the IRS did not attempt to trace the withheld taxes in this case. See Tr. of Oral Arg. 18, 28–29.

[11] The House Report expressly includes property of the debtor recovered under § 542(a) in the estate: the estate includes "property recovered by the trustee under section 542 . . . , if the property recovered was merely out of

nization estate, property of the debtor repossessed by a secured creditor falls within this rule, and therefore may be drawn into the estate. While there are explicit limitations on the reach of § 542(a),[12] none requires that the debtor hold a possessory interest in the property at the commencement of the reorganization proceedings.[13]

As does all bankruptcy law, § 542(a) modifies the procedural rights available to creditors to protect and satisfy their liens.[14] See *Wright* v. *Union Central Life Ins. Co.*, 311

---

the possession of the debtor, yet remained 'property of the debtor.' " H. R. Rep. No. 95–595, p. 367 (1977); see 4 L. King, Collier on Bankruptcy ¶ 541.16, p. 541–72.10 (15th ed. 1982).

[12] Section 542 provides that the property be usable under § 363, and that turnover is not required in three situations: when the property is of inconsequential value or benefit to the estate, § 542(a), when the holder of the property has transferred it in good faith without knowledge of the petition, § 542(c), or when the transfer of the property is automatic to pay a life insurance premium, § 542(d).

[13] Under the old Bankruptcy Act, a bankruptcy court's summary jurisdiction over a debtor's property was limited to property in the debtor's possession when the liquidation petition was filed. *Phelps* v. *United States*, 421 U. S. 330, 335–336 (1975); *Taubel-Scott-Kitzmiller Co.* v. *Fox*, 264 U. S. 426, 432–434 (1924). *Phelps*, which involved a liquidation under the prior Bankruptcy Act, held that a bankruptcy court lacked jurisdiction to direct the Service to turn over property which had been levied on and which, at the time of the commencement of bankruptcy proceedings, was in the possession of an assignee of the debtor's creditors.

*Phelps* does not control this case. First, the new Bankruptcy Code abolished the distinction between summary and plenary jurisdiction, thus expanding the jurisdiction of bankruptcy courts beyond the possession limitation. H. R. Rep. No. 95–595, pp. 48–49 (1977); see *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.*, 458 U. S. 50, 54 (1982) (plurality opinion). Moreover, *Phelps* was a liquidation situation, and is inapplicable to reorganization proceedings such as we consider here.

[14] One of the procedural rights the law of secured transactions grants a secured creditor to enforce its lien is the right to take possession of the secured property upon the debtor's default. Uniform Commercial Code § 9–503, 3A U. L. A. 211 (1981). A creditor's possessory interest resulting from the exercise of this right is subject to certain restrictions on the creditor's use of the property. See § 9–504, 3A U. L. A., at 256–257. Here, we address the abrogation of the Service's possessory interest obtained

U. S. 273, 278–279 (1940). See generally Nowak, Turnover Following Prepetition Levy of Distraint Under Bankruptcy Code § 542, 55 Am. Bankr. L. J. 313, 332–333 (1981). In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings.[15] The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession.

## C

This interpretation of § 542(a) is supported by the section's legislative history. Although the legislative Reports are silent on the precise issue before us, the House and Senate hearings from which § 542(a) emerged provide guidance. Several witnesses at those hearings noted, without contradiction, the need for a provision authorizing the turnover of property of the debtor in the possession of secured creditors.[16] Section 542(a) first appeared in the proposed legisla-

---

pursuant to its tax lien, a secured interest. We do not decide whether any property of the debtor in which a third party holds a possessory interest independent of a creditor's remedies is subject to turnover under § 542(a). For example, if property is pledged to the secured creditor so that the creditor has possession prior to any default, § 542(a) may not require turnover. See 4 L. King, Collier on Bankruptcy ¶ 541.08[9], p. 541–53 (15th ed. 1982).

[15] Indeed, if this were not the effect, § 542(a) would be largely superfluous in light of § 541(a)(1). Interests in the seized property that could have been exercised by the debtor—in this case, the rights to notice and the surplus from a tax sale, see n. 4, *supra*—are already part of the estate by virtue of § 541(a)(1). No coercive power is needed for this inclusion. The fact that § 542(a) grants the trustee greater rights than those held by the debtor prior to the filing of the petition is consistent with other provisions of the Bankruptcy Code that address the scope of the estate. See, *e. g.*, § 544 (trustee has rights of lien creditor); § 545 (trustee has power to avoid statutory liens); § 549 (trustee has power to avoid certain postpetition transactions).

[16] See Hearings on H. R. 31 and H. R. 32 before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary,

tion shortly after these hearings. See H. R. 6, § 542(a), 95th Cong., 1st Sess., introduced January 4, 1977. See generally Klee, Legislative History of the New Bankruptcy Code, 54 Am. Bankr. L. J. 275, 279–281 (1980). The section remained unchanged through subsequent versions of the legislation.

Moreover, this interpretation of § 542 in the reorganization context is consistent with judicial precedent predating the Bankruptcy Code. Under Chapter X, the reorganization chapter of the Bankruptcy Act of 1878, as amended, §§ 101–276, 52 Stat. 883 (formerly codified as 11 U. S. C. §§ 501–676), the bankruptcy court could order the turnover of collateral in the hands of a secured creditor. *Reconstruction Finance Corp.* v. *Kaplan,* 185 F. 2d 791, 796 (CA1 1950); see *In re Third Ave. Transit Corp.,* 198 F. 2d 703, 706 (CA2 1952); 6A J. Moore & L. King, Collier on Bankruptcy ¶ 14.03, pp. 741–742 (14th ed. 1977); Murphy, Use of Collateral in Business Rehabilitations: A Suggested Redrafting of Section 7–203 of the Bankruptcy Reform Act, 63 Calif. L. Rev. 1483, 1492–1495 (1975). Nothing in the legislative history evinces a congressional intent to depart from that practice. Any other interpretation of § 542(a) would deprive the bankruptcy estate of the assets and property essential to its rehabilitation effort and thereby would frustrate the congressional purpose behind the reorganization provisions.[17]

---

94th Cong., 1st and 2d Sess., 439 (1975–1976) (statement of Patrick A. Murphy); *id.,* at 1023 (statement of Walter W. Vaughan); *id.,* at 1757 (statement of Robert J. Grimmig); *id.,* at 1827–1839 (remarks and statement of Leon S. Forman, National Bankruptcy Conference); Hearings on S. 235 and S. 236 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 125 (1975) (statement of Walter W. Vaughan); *id.,* at 464 (statement of Robert J. Grimmig). In general, we find Judge Friendly's careful analysis of this history for the Court of Appeals, 674 F. 2d 144, 152–156 (1982), to be unassailable.

[17] Section 542(a) also governs turnovers in liquidation and individual adjustment of debt proceedings under Chapters 7 and 13 of the Bankruptcy Code, 11 U. S. C. §§ 701–766, 1301–1330 (1976 ed., Supp. V). See

We conclude that the reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization.

## III

### A

We see no reason why a different result should obtain when the IRS is the creditor. The Service is bound by § 542(a) to the same extent as any other secured creditor. The Bankruptcy Code expressly states that the term "entity," used in § 542(a), includes a governmental unit. § 101 (14). See Tr. of Oral Arg. 16. Moreover, Congress carefully considered the effect of the new Bankruptcy Code on tax collection, see generally S. Rep. No. 95–1106 (1978) (Report of Senate Finance Committee), and decided to provide protection to tax collectors, such as the IRS, through grants of enhanced priorities for unsecured tax claims, § 507 (a)(6), and by the nondischarge of tax liabilities, § 523(a)(1). S. Rep. No. 95–989, pp. 14–15 (1978). Tax collectors also enjoy the generally applicable right under § 363(e) to adequate protection for property subject to their liens. Nothing in the Bankruptcy Code or its legislative history indicates that Congress intended a special exception for the tax collector in the form of an exclusion from the estate of property seized to satisfy a tax lien.

### B

Of course, if a tax levy or seizure transfers to the IRS ownership of the property seized, § 542(a) may not apply. The enforcement provisions of the Internal Revenue Code of 1954, 26 U. S. C. §§ 6321–6326 (1976 ed. and Supp. V), do grant to the Service powers to enforce its tax liens that are

---

§ 103(a). Our analysis in this case depends in part on the reorganization context in which the turnover order is sought. We express no view on the issue whether § 542(a) has the same broad effect in liquidation or adjustment of debt proceedings.

greater than those possessed by private secured creditors under state law. See *United States* v. *Rodgers*, 461 U. S. 677, 682–683 (1983); *id.*, at 713, 717–718, and n. 7 (concurring in part and dissenting in part); *United States* v. *Bess*, 357 U. S. 51, 56–57 (1958). But those provisions do not transfer ownership of the property to the IRS.[18]

The Service's interest in seized property is its lien on that property. The Internal Revenue Code's levy and seizure provisions, 26 U. S. C. §§ 6331 and 6332, are special proce-

---

[18] It could be argued that dictum in *Phelps* v. *United States*, 421 U. S. 330 (1975), suggests the contrary. In that case, the IRS had levied on a fund held by an assignee of the debtor for the benefit of the debtor's creditors. In a liquidation proceeding under the old Bankruptcy Act, the trustee sought an order directing the assignee to turn the funds over to the estate. The Court determined that the levy transferred constructive possession of the fund to the Service, thus ousting the bankruptcy court of jurisdiction. *Id.*, at 335–336. In rebutting the trustee's argument that actual possession by the IRS was necessary to avoid jurisdiction, the Court stated: "The levy . . . gave the United States full legal right to the $38,000 levied upon as against the claim of the petitioner receiver." *Id.*, at 337. This sentence, however, is merely a restatement of the proposition that the levy gave the Service a sufficient possessory interest to avoid the bankruptcy court's summary jurisdiction. The proposition is now irrelevant because of the expanded jurisdiction of bankruptcy courts under the Bankruptcy Code. See n. 13, *supra*.

The Court in *Phelps* made a similar statement in discussing the trustee's claim that § 70a(8) of the old Bankruptcy Act, 11 U. S. C. § 110(a)(8) (trustee is vested "with the title of the bankrupt as of the date of the filing of the petition . . . to . . . property held by an assignee for the benefit of creditors"), continued constructive possession of the property in the estate, notwithstanding the prepetition levy. 421 U. S., at 337, n. 8. The Court rejected this claim. It first cited the trustee's concession that the debtor had surrendered title upon conveying the property to the assignee, *ibid.*, and held that, because the debtor did not hold title to the property as of the date of filing, the property was not covered by § 70a(8). The Court went on, however, to state that "the prebankruptcy levy displaced any title of [the debtor] and § 70a(8) is therefore inapplicable." *Ibid.* Because the initial conveyance of the property to the assignee was said to have extinguished the debtor's claim, this latter statement perhaps was unnecessary to our decision.

dural devices available to the IRS to protect and satisfy its liens, *United States* v. *Sullivan*, 333 F. 2d 100, 116 (CA3 1964), and are analogous to the remedies available to private secured creditors. See Uniform Commercial Code § 9–503, 3A U. L. A. 211–212 (1981); n. 14, *supra*. They are provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody. See 4 B. Bittker, Federal Taxation of Income, Estates and Gifts ¶ 111.5.5, p. 111–108 (1981). See generally Plumb, Federal Tax Collection and Lien Problems (First Installment), 13 Tax L. Rev. 247, 272 (1958). At no point does the Service's interest in the property exceed the value of the lien. *United States* v. *Rodgers*, 461 U. S., at 690–691; *id.*, at 724 (concurring in part and dissenting in part); see *United States* v. *Sullivan*, 333 F. 2d, at 116 ("the Commissioner acts pursuant to the collection process in the capacity of lienor as distinguished from owner"). The IRS is obligated to return to the debtor any surplus from a sale. 26 U. S. C. § 6342(b). Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale. See *Bennett* v. *Hunter*, 9 Wall. 326, 336 (1870); 26 U. S. C. § 6339(a)(2); Plumb, 13 Tax L. Rev., at 274–275. In fact, the tax sale provision itself refers to the debtor as the owner of the property after the seizure but prior to the sale.[19] Until such a sale takes place, the property remains the debtor's and thus is subject to the turnover requirement of § 542(a).

## IV

When property seized prior to the filing of a petition is drawn into the Chapter 11 reorganization estate, the Service's tax lien is not dissolved; nor is its status as a secured creditor destroyed. The IRS, under § 363(e), remains enti-

---

[19] See 26 U. S. C. § 6335(a) ("As soon as practicable after seizure of property, notice in writing shall be given by the Secretary to the owner of the property"), and § 6335(b) ("The Secretary shall as soon as practicable after the seizure of the property give notice to the owner").

tled to adequate protection for its interests, to other rights enjoyed by secured creditors, and to the specific privileges accorded tax collectors. Section 542(a) simply requires the Service to seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor's efforts to reorganize.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*