In re BASIN, INC., Debtor.

BASIN, INC., Plaintiff,

v.

UNITED STATES of America, Johnie E. Findley, Gerry R. Findley Gray, Michael Wisenbaker and Alinda H. Wisenbaker, Defendants.

Bankruptcy No. 382–01496–F.
Adv. No. 382–1473.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Aug. 24, 1983.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

Basin, Inc. ("debtor"), Michael Wisenbaker ("Wisenbaker") a former officer and shareholder of the debtor, and Internal Revenue Service ("IRS") each contests for ownership of an interest in a 1980 Sea Ray, a pleasure boat. The following summary constitutes findings of fact and conclusions of law after nonjury trial.

Some of the facts are uncontroverted. All parties agree that in May 1980 Johnie E. Findley and Michael Wisenbaker purchased the subject boat from Falcon Marine in Midland, Texas, for approximately $160,-000.00. At that time Findley was President of Basin, Inc. and the owner of 15% of its stock. Wisenbaker was Chairman of the Board of Directors of Basin, Inc. and owned one-third of the stock in GMW, Inc. which, in turn, owned approximately 65% of the Basin, Inc. outstanding stock. Although Wisenbaker concedes that on all occasions germane to the issues in this proceeding he had not used the boat there is no contention by the debtor that Wisenbaker and Findley in fact had purchased the boat for or on behalf of the corporation, Basin, Inc. The parties also agree that the certificate of title mandated by V.T.C.A. Parks & Wildlife Code, § 31.053(b) was issued to Findley and Wisenbaker and that the names of those owners have never been changed on the certificate of title. It is apparent that anyone making inquiry to the custodian of the records of ownership of motor boats, as reflected by the certificates of title, could conclude that Findley and Wisenbaker are the owners of the motor boat.

On a date subsequent to May 1981 Basin, Inc. filed petition for order for relief under Chapter 11 of Title 11, United States Code. As debtor it initiated the complaint in this adversary proceeding, contending that it had acquired ownership of the boat from Findley and Wisenbaker in February 1981. It claims that Findley and Wisenbaker agreed to convey the title to the boat to the debtor for the sum of $160,000.00 in cash, that checks on the corporation's account were drafted to Wisenbaker in the sum of $80,000.00 and to Findley's nominee, John A. Holman, in the sum of $80,000.00, but that those checks were never delivered. Debtor further claims that in February 1981, at the time it contends that it acquired ownership of the boat, it was having some cash liquidity problems and a decision was made that instead of paying Wisenbaker and Findley in cash their respective accounts owed to the corporation should be credited with that sum of $80,000.00. It adduced some exhibits at the trial, consisting of drafts dated February 11, 1981 on

the Basin, Inc. Operating Account, payable to M.B. Wisenbaker in the sum of $80,-000.00 and to Findley's nominee, John A. Holman, in the sum of $80,000.00, but with the signature torn from each draft and consisting also of some corporate records which it contends evidences the issuance of $80,000.00 credit each to Wisenbaker and Findley. Further, it points to the fact that soon after that date of February 11, 1981, the corporation obtained possession and assumed control of the boat by moving it from its moorage on the Gulf at Rockport, Texas, to Lake Amistad, an inland fresh water lake near Del Rio, Texas.

Wisenbaker vehemently denied that either he or Findley had agreed to sell or transfer the boat to Basin, Inc. and denied that in February 1981, when the alleged credit was supposed to have been issued, that he was indebted to Basin, Inc. in any amount of money. Notwithstanding the fact that he had never used the boat and had possibly seen the boat on no more than two or three occasions, he claimed that he never had any intention whatsoever to transfer the boat to Basin, Inc.

Findley, for reasons that remain obscure, did not appear at the trial. However, Internal Revenue Service, which had attached Findley's alleged interest in the boat for a tax deficiency owed by Findley, claimed his interest in that boat.

## THE INTERNAL REVENUE SERVICE CLAIM

■ IRS adopts the argument and defenses urged by Wisenbaker that Findley had not intended to convey his interest in the boat to Basin, Inc. However it primarily relies upon the fact that at the time it levied upon and seized the boat for nonpayment of taxes (alleged by it to be in excess of $700,000.00 due from Johnie E. Findley and Gerry R. Findley) one of the owners of the boat, as reflected by the certificate of title, was Findley. IRS posits further that Texas is a "certificate of title state" and that as far as IRS is concerned any purported sale of the boat from Findley to Basin,

Inc., without the attendant transfer of title and ownership changes on the certificate, would be void.

There is a paucity of decisions interpreting the provisions of the Parks & Wildlife Code which mandate that one cannot acquire an interest in a motor boat until a certificate of title for the motor boat has been issued in the name of the purchaser. An analogous state statute is the Certificate of Title Act pertaining to motor vehicles, codified at V.A.T.C.S. art. 6687–1. Review of the cases construing the Certificate of Title Act where motor vehicles are involved indicates that when there has been no compliance with the Certificate of Title Act the purchasers, as between the purchaser and the seller, obtains equitable title, but the rights of third parties who rely, or who are entitled to rely, on ownership as reflected by the certificate of title are not adversely affected. In this case IRS falls into the category of an innocent third party who may rely upon ownership as reflected by the certificate of title. Regardless whether Findley did in fact agree to transfer the boat to Basin the certificate of title was never changed and, as far as the turnover complaint against IRS is concerned, IRS must prevail.

I must pretermit the debtor's further argument that the imposition of the tax lien obtained by IRS as a result of its levy and seizure of the boat in December 1982 constitutes a preference under § 547 of the Code, because Findley allegedly filed petition for relief under the Bankruptcy Code in the Eastern District of Texas one month later in January 1983. Debtor contends that it is a creditor of the Findleys and that it might have the right to raise that preference issue or, under the *Whiting Pools*[1] analysis, it could assert those avoiding powers or seek turnover relief. As far as the record reflects no such relief has been sought by the debtor, either in the Eastern District of Texas or elsewhere. Also, there is a valid question as to whether an individual creditor possesses avoiding powers that ordinari-

---

**1.** *United States v. Whiting Pools, Inc.,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

ly belong to the trustee or to the debtor-in-possession. In any event those issues are not properly before this court.

I conclude, therefore, that the turnover complaint by the debtor against Internal Revenue Service should be denied.

### THE CLAIM OF MICHAEL WISENBAKER

■ Wisenbaker defends the turnover complaint on three separate bases. First, he vehemently denies that he was indebted to Basin, Inc. on February 1981 when the transaction allegedly took place and he denies that he had ever agreed to sell or otherwise transfer the boat to Basin, Inc. Second, he raises the certificate of title issue. Finally, he claims that in May 1982, a compromise settlement agreement between Basin, Inc., Walter Davis, GMW, Inc., and others was effected, forever resolving any disputes, including the issues surrounding the boat ownership controversy, between them.

The certificate of title argument advanced by Wisenbaker is rejected. If, in fact, he had agreed to transfer the boat to Basin, Inc. under the conditions claimed by the debtor, Basin, Inc. would have obtained equitable title from him. As between those parties compliance with the Certificate of Title Act would not have been of paramount importance.

■ The debtor has the burden of persuasion on the issue that Wisenbaker had agreed to the transfer of the boat to Basin in exchange for a credit of $80,000.00 against a debt owed by Wisenbaker to the corporation. The evidence adduced at the trial was something less than persuasive. Wisenbaker persisted in his denial that he owed the corporation anything in February 1981. The deposition testimony of Hill was inconclusive on the issue of whether Wisenbaker on any specific occasion agreed to the conveyance of the boat in exchange for merely crediting an indebtedness owed by him to the corporation. Of course, if Wisenbaker owed no indebtedness to Basin his argument that the exhibits were contrived long after the transaction was alleged to have occurred would have some appeal.

However, I cannot completely separate that issue from the third defense raised by Wisenbaker .... that the boat ownership issue was resolved by the May 1982 settlement agreement.

Basin, Inc. was under new ownership when the settlement agreement was executed. Although Wisenbaker argues that he called to the attention of someone connected with the debtor that he wanted the return of his boat there is nothing in the record of this adversary proceeding which persuades me that the boat ownership issue was meaningfully raised in the settlement negotiations. If the new owners were in good faith relying on any corporate records which reflected that an $80,000.00 credit had been issued to Wisenbaker in February 1981 in exchange for the transfer of the boat then an $80,000.00 indebtedness from Wisenbaker to Basin, Inc., if any such indebtedness had existed at any relevant time, was not within the contemplation of the debtor in the settlement negotiations. The settlement agreement itself was received in evidence at the trial, but sufficient facts regarding the boat ownership issue and the $80,000.00 credit, if any, was not sufficiently developed.

I conclude, therefore, that the turnover complaint filed by the debtor against Wisenbaker should be denied, without prejudice, however, to any right which the debtor might have to file new pleadings or otherwise develop any challenge which it might have that (1) Wisenbaker was indebted to Basin, Inc. in the sum of $80,000.00 in February 1981, and (2) the boat ownership issues and the $80,000.00 indebtedness, if any, were not, reasonably, within the contemplation of responsible officials of debtor during the negotiations or at the time of execution of the May 1982 settlement agreement.

It is, therefore, ORDERED by the Court that Basin, Inc., debtor, do have and recover nothing against Internal Revenue Service by virtue of its turnover complaint.

**14**

It is further ORDERED by the Court that the complaint for turnover filed by Basin, Inc., debtor, against Michael Wisenbaker and Alinda H. Wisenbaker be, and it is hereby, denied without prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.