**In re BRUNO CORPORATION, a Hawaii corporation, Debtor.**

**In re Mary Anne BRUNO, Debtor.**

**Bankruptcy Nos. 83–00478, 83–00509.**

United States Bankruptcy Court, D. Hawaii.

March 28, 1984.

Thomas P. Dunn, Honolulu, Hawaii, for movant.

Colin K. Kurata, Honolulu, Hawaii, for debtor.

Carroll S. Taylor, Kimo C. Leong, Honolulu, Hawaii, for creditor.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DENYING MOTION TO MODIFY STAY**

JON J. CHINEN, Bankruptcy Judge.

A Motion to Modify Stay was filed by Clinton Lee, Robert Converse and Libations, Inc., (hereinafter jointly "Movants") on January 19, 1984, pursuant to 11 U.S.C.

---

§ 362(d), on the grounds that the debtors Mary Anne Bruno and Bruno Corporation, (hereinafter jointly "Debtors") had no equity in the business assets of the University Pump Liquor Store, including the leasehold interest in the premises located at 1023 University Avenue, Honolulu, Hawaii; that the business assets, particularly the leasehold interest, was not necessary to an effective reorganization or that such reorganization was not likely to be effectuated; and that Movants were not adequately protected. Movants prayed for an order lifting the stay to permit foreclosure of Debtors' interest in said leasehold and auction or liquidation of all other business assets.

A preliminary hearing was held on January 27, 1984 and the final hearing was held on February 28 and March 5, 1984. A Pre-Trial Order was entered on February 7, 1984, which required the Debtors to pay all pre- and post-petition interest due to Movants by February 28, 1984.

Debtors submitted a Memorandum in Opposition to Motion to Modify Stay, as amended, on January 27, 1984. Hawaiian Telephone Co., Inc. filed a Memorandum in Opposition to Motion to Lift Stay on March 1, 1984.

Based upon the evidence adduced at trial, the arguments of counsel, the memoranda, records and files herein, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Clinton Lee and Robert Converse are residents of Honolulu, State of Hawaii, and Libations, Inc. is a Hawaii corporation. They are the sellers of the leased premises in dispute under that certain Agreement of Sale, dated May 1, 1980, and they also have a lien on all of the equipment, furniture, inventory and supplies on the leased premises by virtue of a pledge of stock and a recorded financing statement.

2. The purchasers under said Agreement of Sale were Mary Anne Bruno and Karl S. Bruno, in joint tenancy. Sometime after May 1, 1980, Ms. Bruno began operating the business on the leased premises as University Pump Liquors, under the name Bruno Corporation.

3. Under the terms of said Agreement of Sale, the principal balance of $125,000 was due on May 1, 1983 and remains unpaid. There is no dispute as to this amount due and in default.

4. Movants further claim attorneys' fees and costs resulting from the default in the approximate sum of $15,000.00; however no evidence was submitted as to the extent of such claim.

5. The interest accrued on the principal balance has been paid and is current through the month of March 1984, and all insurance coverages required of the Debtors are current and effective through May, 1984.

6. The landlord, Thomas Square Development, Inc., claims delinquent rent in the sum of $13,000.00; but this amount is disputed by Debtors.

7. Debtor Bruno Corporation has entered into a new lease agreement with the landlord, under which the landlord reserves the "right to demolish said building" after December 31, 1984. In the event of demolition, Debtor would be required to "peacefully surrender said premises to Lessor" at the end of a 180-day notice period.

8. The lease agreement grants to Bruno corporation a "First Right of Refusal" for a new ten-year lease upon terms and conditions to be negotiated, at the completion of the existing lease term. The Debtors acknowledged that, because of this demolition clause in the new lease, it has been impossible to refinance Bruno Corporation, sell the property for an amount to repay the secured creditors, or acquire an equity partner.

9. No competent evidence was submitted by Movants to show that the Debtors are in default of post-petition taxes, for which the retail liquor license may be subject to suspension, nor that any tax lien has been filed or lien notice been duly recorded.

10. No evidence was submitted to show that the landlord has any intention of de-

molishing the building in which the leased premises is located, or has any plans, applications or financing for the same. To the contrary, Ms. Bruno testified that she was informed by Mr. J. Wong representing the landlord that, at present, there was no plan to demolish the building. Ms. Bruno testified that theirs is the last lease to have a demolition clause included, meaning that all tenants of Thomas Square Development, Inc. have this provision in their leases, and that this clause merely provides the landlord the option in the event that such demolition becomes feasible, which it is not under present zoning ordinances.

11. Movants submitted no competent evidence as to the fair market value of the business assets in question and the lack of equity in such assets. Instead, Movants relied upon the July 31, 1983 Balance Sheet of Bruno Corporation, prepared by Debtors' accountant, which reported the assets to be worth $201,933 as of that date. Of said value, the item "Loans to stockholders" was incorrectly listed in that the amount listed was loans from stockholders which had been paid. The item listed as "Goodwill" was not clear to Ms. Takamine, the representative of the CPA firm who prepared the Balance Sheet. She reported that this figure was not supported by work sheets, but was a mere carryover figure after the date of purchase, the purpose of which she could not recall.

12. In her testimony, Ms. Bruno, the president of Bruno corporation, reported that the cash on hand is now in excess of that in existence on July, 1983, as is the addition of another delivery truck, inventory, prepaid insurance and deposits. The president further reported that there was no entry of the value of the lease for amortization purposes and that, for convenience, this is what was carried over as "Goodwill". The president further testified that substantial changes had been made in operations since July to reduce operating costs and increase the profit margin.

13. This Court finds that the figure $182,857, being the asset value of $201,933,

less the amount of $19,076 listed as "Loans to stockholders", may be used as the fair market value as of July 1983. The equity held by the Debtors, after deduction of the claim of Movants in the sum of $140,000.00, which sum includes attorneys' fees and costs, is approximately $42,857.00.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties hereto, the subject property, and has authority under the Bankruptcy Code, § 362, to render a decision regarding the Motion to Modify Stay.

2. Under § 362(d), a party in interest may request relief from the automatic stay "(1) for cause, including lack of adequate protection of an interest in property of such party in interest; or (2) with respect to a stay of an act against property, if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization."

3. The principal amount due and unpaid to Movants is $125,000, plus approximately $15,000.00 for attorney's fees and costs.

4. It is uncontroverted that the Debtors are current in payment of all interest payments to Movants, insurance coverages as required and are not subject to any tax liens or notices of liens.

5. The Debtors are involved in pending court proceedings (Civil No. 75979, Circuit Court of the First Circuit, State of Hawaii) over the disputed lease which affects the amount of lease rent owing and the duration of the lease. Resolution of this dispute is necessary to any plan of rehabilitation and is in the best interest of all parties concerned.

6. Under Chapter 11 of the Bankruptcy Code, Debtors are authorized to continue the operation of their business and are granted an opportunity to reorganize the business to operate successfully in the future. As the Supreme Court of the United States stated in *United States v. Whiting Pools, Inc.*, —— U.S. ——, ——, 103 S.Ct. 2309, 2312, 76 L.Ed.2d 515 (1983):

By permitting reorganization, Congress anticipated that the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners. H.R.Rep. No. 95–595, p. 220 (1977). Congress presumed that the assets of the debtor would be more valuable if used in a rehabilitated business than if "sold for scrap." *Ibid.* The reorganization effort would have small chance of success, however, if property essential to running the business were excluded from the estate. (Citations omitted.)

7. There is no evidence of any real or apparent threat of demolition by the landlord.

8. The Debtors have equity of $42,857 over and above the secured claim of Movants and the business assets are deemed essential to an effective rehabilitation for which the Debtors have a reasonable likelihood of success. The Debtors have made substantial effort to reorganize the business operations and the costs thereof. The equities weigh in their favor to permit the ongoing process of rehabilitation.

9. In view of all the assets that are available to Movants, the Court finds that Movants are adequately protected so long as Debtors continue to be current in their payments of interest and lease rents.

10. Since the Court finds that there is equity for Debtors in the property of the estate and that the property is necessary for an effective reorganization, Movants cannot prevail under 11 U.S.C. Section 362(d)(2).

11. Since the Court also finds that Movants are adequately protected so long as Debtors are current in their interest and lease payments, this precludes relief from stay based on 11 U.S.C. § 362(d)(1).

12. For the foregoing reasons, the Court denies the Motion To Modify Stay. However, because of the threat of the landlord to proceed against Movants for the payments of the rents that are in dispute between the landlord and Debtors, and because of other possible changes in circumstances, the Court is granting Movants leave to request a further hearing at any time in the future when they feel that they are entitled to relief under Section 362.

IT IS HEREBY ORDERED that the Motion to Modify Stay is hereby denied.