**In re Kennard WARFIELD t/a Warfield Brothers, Debtor.**

**Kennard WARFIELD t/a Warfield Brothers, Plaintiff,**

**v.**

**UPPER CHESAPEAKE PRODUCTION CREDIT ASSOCIATION, Defendant.**

Bankruptcy No. 83–A–1531.
Adv. No. 84–0005A.

United States Bankruptcy Court,
D. Maryland,
at Rockville.

Sept. 17, 1984.

Lyle Bakst, Washington, D.C., for debtor.

Karen Myers, Zauner, Baltimore, Md., for Upper Chesapeake Production Credit Association.

MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

This matter comes before the court on the complaint of a debtor-in-possession to compel a turnover of property allegedly seized two weeks before debtor filed its Chapter 11 petition. Debtor asserts that the property or its proceeds are necessary to ensure the continued operation of the business. The main issue is whether the subject property is "property of the estate." Counsel for debtor/plaintiff and defendant waived oral argument and submitted the matter for consideration on the pleadings alone.

Warfield Brothers, debtor herein, is a general partnership organized under Maryland law and engaged in the dairy, beef cattle, and grain farming business and in the sale and application of chemicals, fertilizers, herbicides, and lime. Debtor's primary lender was the Upper Chesapeake Production Credit Association ("PCA"), formerly known as the Towson Production Credit Association, defendant herein. Defendant PCA was and is a "federally chartered instrumentality of the United States" pursuant to the Farm Credit Act of 1971. 12 U.S.C. §§ 2001 *et seq.*; 12 U.S.C. § 2091.

One objective of the Farm Credit Act is "to encourage farmer- and rancher-borrowers participation in the management, control, and ownership of a permanent system of credit for agriculture." *Id.* at § 2001(b). This objective is accomplished in part by a requirement that each borrower from a production credit association own "voting stock or participation certificates as provided in the bylaws of the association, in an amount equal in book value ... to $5 per $100 or fraction thereof of the amount of the loan." *Id.* at 2094(f). The production credit association has a first lien on such stock and participation certificates (12 U.S.C. § 2094(j)) and "[i]n any case where the debt of a borrower is in default, the association may retire all or part of the capital investments in the association held by such debtor ... in total or partial liquidation of the debt." *Id.* at § 2094(k). The bylaws of PCA reiterated this latter provision as follows:

Capital stock and participation certificates may be retired ... subject to the following: ... When the debt of the owner is in default, the executive committee may order any stock or certificates owned by him retired and the proceeds thereof applied against his indebtedness to the association.

PCA called debtor's loans "in default" on May 9, 1983, approximately five months before debtor filed its petition under Chapter 11. Apparently some efforts were made to work out the problems that had developed. Nevertheless, on October 3, 1983, PCA retired debtor's stock at its par value and applied the proceeds to debtor's indebtedness. Debtor filed its petition under Chapter 11 on October 17, 1983, and then filed a complaint to compel turnover of the stock or its proceeds on January 11, 1984. PCA opposes the complaint and requests that it be dismissed.

Debtor proceeds under § 542(a) of the Bankruptcy Reform Act of 1978 (the Code), which provides in pertinent part that,

an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a). Debtor avers that the recovered stock or its proceeds would be the subject of a motion under § 363 insofar as such property would be necessary to the continued operation of debtor's business. Section 363 provides, in pertinent part, that the debtor-in-possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Any such transaction involving the stock or its proceeds would be "other than in [this debtor's] ordinary course of business." The remaining threshold criteria for a § 363(b) motion, and therefore for the debtor's complaint to compel turnover, is that the stock or its proceeds be "property of the estate."

Debtor cites *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), for the proposition that encumbered property which is seized pre-petition continues as property of the estate and may be the subject of a turnover order. PCA distinguishes *Whiting Pools* and in addition argues that turnover under § 542(a) is not available to debtor because the stock would be of "inconsequential value or benefit to the estate."

In *Whiting Pools*, the debtor corporation (Whiting) had failed to respond to assessments and demands for payment made by the IRS and consequently, pursuant to statute, a tax lien attached to all of Whiting's property. The IRS subsequently seized Whiting's tangible personal property, again pursuant to statute, and on the following day Whiting filed a petition under Chapter 11. The matter came before the Court on the IRS' motion for relief from the automatic stay of § 362 in order to proceed with a tax sale of the property. Whiting counterclaimed for an order compelling turnover under § 542(a).

The Court focused its analysis on whether § 542(a) authorizes turnover of a debtor's property seized by a secured creditor prior to the commencement of reorganization proceedings. The issue narrowed down to whether the seized property was "property of the estate." The Court examined the Code (§ 541(a)(1)), legislative history, and the statutory scheme underlying Chapter 11 by way of concluding that "Congress intended a broad range of property to be included in the estate," including property of the debtor repossessed by a secured creditor.' 103 S.Ct. at 2312–14.

In returning to the question of whether turnover was authorized, however, the Court noted that "[o]f course, if a tax levy or seizure transfers to the IRS ownership of the property seized, § 542(a) may not apply." *Id.* at 2316. The significance of *Whiting Pools* to the case at bar lies in the Court's careful distinction of the facts of that case:

> The Service's interest in seized property is its lien on that property. The Internal Revenue Code's levy and seizure provisions are special procedural devices available to the IRS to protect and satisfy its liens, and are analogous to the remedies available to private secured creditors. They are provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody.

*Id.* at 2316 (citations omitted). The Court cited case law and several sections of the Internal Revenue Code for its conclusion that ownership of the seized property in that case had remained in the debtor. *Id.* at 2316–17. The Court affirmed the court of appeals' ruling that a turnover order could issue against the Service under § 542(a).

This court concludes that the Farm Credit Act's default provision gives a production credit association more than a lienholder's interest in a borrower's stock, that a retirement of stock pursuant to that provision constitutes a transfer of ownership of that stock out of the debtor. While the Farm Credit Act does not define the effect of retirement on the status of stock or certificates, corporation law generally provides that retired stock shall have the status of unissued stock. *See, e.g., Md. Corps. & Ass'ns Code Ann.* § 2–313(c)(1) (1975). Furthermore, the Supreme Court has described stock such as our debtor's as "an asset that may be used as a setoff in case of a default on the loan." *United States v. Mississippi Chemical Corporation*, 405 U.S. 298, 309, 92 S.Ct. 908, 914, 31 L.Ed.2d 217 (1972).[1] Such unilateral authority over the disposition of stock, vested unequivocally by federal law in lending associations like PCA, cannot be supplanted by the vague contours of § 541(a)(1). While the Supreme Court in *Whiting Pools* declined to then "decide the outer boundaries of the bankruptcy estate" in its § 541(a)(1) analysis, 103 S.Ct. at 2313, n. 10, the Court specifically located property as to which ownership had been transferred from the debtor *outside* those boundaries. This court likewise places stock retired pre-petition pursuant to default in a debt, 12 U.S.C.

---

**1.** *Mississippi Chemical Corporation* was a tax case in which borrowers holding stock which was purchased as a condition to borrowing under the Farm Credit Act attempted to deduct 99% of the cost of such stock as an interest expense on the loan. Although the borrowers in that case were "banks for cooperatives," the transactions in which they had engaged were within the farm credit system in which our debtor transacted and their lenders stood in the same relation to them, statutorily, as does the lending PCA to the debtor in our case.

§ 2094(k), outside the boundaries of the debtor's estate.

Insofar as the stock is not "property of the estate" and could not be used or sold as such under § 363, debtor fails to satisfy an essential criterion of § 542(a). Debtor's complaint to compel turnover will be dismissed accordingly.