**In the Matter of Rita Ann
PATTERSON, Debtor.**

**Rita Ann PATTERSON, Plaintiff,**

v.

**Wilburn SPRADLIN, Defendant.**

**Bankruptcy No. 95–81595.
Adv. 95–80136.**

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

Aug. 8, 1995.

Michael A. Stewart, Cullman, AL, for plaintiff Rita Patterson.

S. Wayne Fuller, Cullman, AL, for defendant Wilburn Spradlin.

## MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

This matter is before the Court on a complaint filed by the plaintiff, RITA ANN PATTERSON, seeking the turnover of one 1984 Cadillac Seville. The trial in this matter was held on the 26th day of July, 1995. The parties entered into an agreement, signed and dated September 22, 1994. Under the agreement, the defendant agreed to loan $3,662.00 to the debtor for a sixty day period without interest. In exchange for the loan, the agreement provided that the debtor would provide the defendant with two post-dated checks, each in the amount of $1,831.00. In addition, the agreement provided that the defendant would hold the Certificate of Title to the debtor's 1984 Cadillac Seville. The debtor endorsed the back of the car title and delivered same with the checks to the defendant.

The first post-dated check cleared the debtor's account. Thereafter, the debtor defaulted on the loan, leaving a balance of $1,831.00 due under the agreement. On July 15, 1995, the debtor filed a Chapter 13 bankruptcy petition in the Northern District of Alabama, Case No. 95–81595. The debtor's Chapter 13 petition listed the defendant as a secured creditor in the amount of $1,900.00.

There is a factual dispute as to the date the defendant repossessed debtor's automobile. Defendant contends that he repossessed the automobile on either the 15th or 16th day of July, 1995. Debtor contends that the automobile was repossessed on the 16th day of July, 1995, one day after she filed her petition. Thereafter, the debtor notified de-

fendant of her pending Chapter 13 case. Nevertheless, the defendant disregarded the debtor's pending Chapter 13 case by having the Certificate of Title to the debtor's automobile changed to his name.

■ The Court finds the threshold issue involved in this matter is whether the document executed between the parties constitutes a valid financing arrangement governed by Article 9 of the Alabama Commercial Code. Under pre-Code law, practitioners were faced with a variety of security devices, each based upon artificial distinctions. Adoption of the Commercial Code eliminated these devices and their artificial distinctions by replacing them with the Article 9 security interest. Section 7–9–102(a) of the Alabama Code provides that, except for certain types of transactions excluded from its scope,[1] Article 9 applies "[t]o any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts...". Thus, the key to coverage under § 7–9–102 is whether the parties to the transaction had the requisite intent to create a security interest, rather than the particular form in which the transaction arose.

■ The Court finds that the agreement entered into between the parties was in fact a transaction in which the parties intended to create a security interest in personal property. The debtor borrowed money from the defendant while offering a 1984 Cadillac Seville as security for the debt. Although the agreement provided that the defendant would hold the title to the debtor's car until she repaid the loan, section 7–9–202 of the Alabama Code clearly provides that the provisions of Article 9 apply "whether title to collateral is in the secured party or in the debtor." Moreover, the Court finds that none of the exclusions from Article 9 provided under section 7–9–104 are applicable in this case. Thus, Article 9 will govern the agreement entered into between the parties.

■ Article 9 provides maximum coverage for secured parties where the following two requirements are satisfied: (1) attachment or creation of a security interest and (2) perfection of the security interest. Section 7–9–203(1) provides that a valid security interest is created and will not attach unless:

(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral ...; and

(b) Value has been given; and

(c) The debtor has rights in the collateral.

■ The Court finds that the parties have satisfied the first requirement of attachment by fulfilling section 7–9–203(1). The parties executed a written security agreement describing the collateral as a 1984 Cadillac Seville under which the defendant gave value in the amount of $3,662.00 for an automobile in which the debtor had legal rights. The Court notes that the written agreement did not contain a formal granting clause, specifically granting the defendant a security interest in the debtor's automobile. Nonetheless, the Court finds that no "magic words" are required where an intent to create a security interest can be inferred from the document.[2] The Court would admonish cautious practitioners to include such words of grant when attempting to create a security interest.

■ Section 7–9–303 provides that the second requirement of perfection is satisfied when the security interest "has attached and when all of the applicable steps required for perfection have been taken." Although the Court finds that the security interest in this instance attached under section 7–9–203(1), the Court does not believe that the defendant complied with the remaining applicable steps required for perfection found in sections 7–9–302(3) and 32–8–61 of the Alabama Code. Security interests are commonly perfected by the filing of a UCC–1 financing statement in an appropriate state agency.[3] However, to

---

**1.** See ALA.CODE § 7–9–104 (1975).

**2.** See *Matter of Hollie,* 42 B.R. 111 (Bankr. M.D.Ga.1984).

**3.** ALA.CODE § 7–9–302 (1975).

perfect a security interest in an automobile section 32–8–61(b) provides that:

> "[a] security interest is perfected by the delivery to the department of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed with 20 days thereafter, otherwise, as of the time of delivery."

The defendant failed to comply with section 32–8–61 in that the defendant effectuated a change in the Certificate of Title to his name after default. Instead, the defendant should have had the Certificate of Title issued in the debtor's name with his status as lienholder noted on the title. Thus, this Court finds that the defendant failed to perfect his security interest in the debtor's 1984 Cadillac Seville. Because the defendant failed to perfect his security interest, he will not be afforded priority status against third parties.

■ Section 544 of the Bankruptcy Code grants to the bankruptcy trustee the status of a hypothetical lien creditor of the debtor, who as of the commencement of the case, had completed the legal (or equitable) processes for perfection of a lien upon all property of the debtor available for the satisfaction of his claim against the debtor. *Collier on Bankruptcy* @ 544.02, at 544–6. Basically, this means that a trustee can avoid the security interest of a creditor if the security interest was not properly perfected. The Court having determined that the security interest of the defendant was not properly perfected, the trustee may avoid the lien pursuant to 11 U.S.C. § 544(a). If the trustee avoids this security interest of the defendant in the automobile, the debtor may not claim the property as exempt because it was voluntarily transferred i.e., the debtor voluntarily gave the defendant a security interest in the automobile. 11 U.S.C. § 522(g)(1)(A).

■ In addition, section 547(b) allows a lien to be avoided as a preferential transfer if such interest was transferred within 90 days of the filing of the petition in bankruptcy.

Assuming this Court had determined that the transfer of the title to the defendant had been property perfected, the transfer would still be avoidable as a preferential transfer because it took place one day before the debtor filed bankruptcy.

■ Finally, section 541 of the Bankruptcy Code sets forth what constitutes property of the estate. This includes all legal and equitable interests of the debtor in property as of the commencement of the case.

The Court finds that the debtor had both a legal and equitable interest in the automobile. This finding is supported by the fact that the defendant improperly had the title converted to his name, therefore, the debtor was still the legal holder of the title on the day she filed bankruptcy. The debtor also had a statutory right of redemption. ALA. CODE § 7–9–506 (1975). *See U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Further, the defendant did not dispose of the collateral in conformity with the Uniform Commercial Code. ALA. CODE § 7–9–504 (1975).

After consideration of the evidence and conclusions of law, the Court finds that the defendant did not properly perfect his security interest in the 1984 Cadillac Seville automobile. The defendant has an unperfected security interest against the automobile, which may be avoided by the trustee. The Court also finds that the automobile is property of the bankruptcy estate pursuant to section 541 and shall be returned to the debtor.