**In re Lelia V. JACKSON, Debtor.**

**Thomas R. NOLAND, Trustee in Bankruptcy, Plaintiff,**

v.

**FRE, INC., D/B/A Rich's Pawn Shop, Defendant.**

Bankruptcy No. 3–87–01985.
Adv. No. 3–88–0086.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Dec. 5, 1988.

Thomas R. Noland, Dayton, Ohio, for plaintiff.

Roy H. Horn, Dayton, Ohio, for defendant.

Christopher M. Hawk, Dayton, Ohio, for debtor.

DECISION AND ORDER DENYING MOTIONS OF PLAINTIFF AND DEFENDANT FOR SUMMARY JUDGMENT

WILLIAM A. CLARK, Bankruptcy Judge.

Dated at Dayton, Ohio this 29th day of November, 1988.

This matter is before the court upon cross-motions of plaintiff and defendant for summary judgment. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (H).

### UNDISPUTED FACTS

On April 27, 1988 the trustee in bankruptcy for the bankruptcy estate of debtor Lelia V. Jackson filed a complaint against defendant Fre, Inc. in order to avoid an alleged transfer made by the debtor to Defendant as fraudulent or preferential. The following facts appear undisputed from the pleadings and affidavits filed in this matter:

1) On October 5, 1984 Harry Jackson purchased a ring from Elder–Beerman Stores for a purchase price of $2467.68 and granted a security interest in the ring to Elder–Beerman Stores;

2) On October 9, 1984 an appraiser for Elder–Beerman appraised a 14 carat ring as having a "current retail value" of $4,850.00;

3) On July 18, 1986 Mr. Jackson, while married to the debtor, deposited a gold ring at Defendant's pawn shop in exchange for a $500.00 loan. The agreement between Mr. Jackson and Defendant required interest to be paid at the rate of $25.00 per month plus a storage charge of $1.00 per month until the pawned ring was either redeemed or forfeited;

4) Mr. Jackson died on February 13, 1987;

5) On March 21, 1987 Defendant sent a notice to Mr. Jackson's residence that the ring would be forfeited in accordance with Ohio law if not redeemed by April 21, 1987;

6) After receiving the notice of forfeiture, the debtor went to the pawn shop and informed Mr. Steve Bertke of Defendant's establishment that she did not desire to redeem the ring for $734.00 ($500.00 original loan plus $234.00 accumulated interest and storage charges) and that Mr. Bertke could sell the ring. Debtor was told that

the ring would not be sold until the "due date" of April 21, 1987;

7) Defendant declared the ring forfeited on April 21, 1987. Subsequently, Defendant removed a one carat diamond from the ring, remounted it in a ladies' ring and sold it to a retail purchaser for $1,500.00;

8) Debtor filed her petition in bankruptcy on June 26, 1987;

9) Debtor has stated in an affidavit in this proceeding that Harry Jackson owned more than one yellow gold ring.

The trustee maintains that the forefeiture of the ring by Defendant constituted either a fraudulent or preferential transfer under the Bankruptcy Code and is, therefore, voidable by the trustee.

## DISPUTED OR UNSUBSTANTIATED FACTS

Federal Rule of Civil Procedure 56(c) requires that

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In the instant matter there is clearly a dispute concerning the value of Mr. Jackson's ring. The appraisal submitted by the trustee values a ring at $4,850.00, but David Bertke states in his affidavit that the reasonable fair market value of the ring on July 18, 1986 was $500.00. In addition, Defendant has submitted an affidavit from Ted Herzog which tends to impeach the appraisal made at Elder Beerman Stores. A motion for summary judgment does not contemplate a trial by affidavits and the court is unable to reconcile the conflicting opinions regarding the ring's value without the opportunity to hear and view the witnesses. Further, at this point, there is some doubt as to whether Harry Jackson pawned the same ring that was purchased and appraised in 1984. Debtor has stated in her affidavit that Harry Jackson owned more than one yellow gold ring.

Finally, the court notes that, while the parties agree that the pawned ring was subject to a lien in favor of Elder–Beerman in the amount of approximately $7,000.00, the documents before the court do not clearly establish the existence and amount of that lien. The retail installment contract between Harry Jackson and Elder–Beerman grants a security interest in a ring in the amount of $2567.68. How did the ring become subject to a $7,000.00 security interest? Although the debtor has listed Elder–Beerman as a creditor in the amount of $7,172.00 with a security interest in "furniture, diamond ring, table computer, couch, 2 chairs, 4 kitchen chairs" (valued at $6,367.00), the court has been presented with no evidence of the current debt or the security interest covering these items. Nor does the court know whether the "diamond ring" listed in the debtor's schedules is the ring that was pawned with Defendant or is a different ring.

As a result of these disputed and unsubstantiated facts, the court is unable to grant summary judgment to either party.

## PRELIMINARY CONSIDERATIONS OF LAW

The court believes that the following observations may be beneficial in assisting the parties' preparation for trial. The relevant portion of Section 548 of the Bankruptcy Code provides that,

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .

11 U.S.C. § 548(a). The court's initial inquiry will be into the nature of the debtor's

"interest" in the ring at the time she informed Steve Bertke that he could sell the ring.

Property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It is not necessary, however, that a debtor have a "possessory" interest in property at the time of filing a petition in bankruptcy:

§ 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code ... Several of these provisions bring into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2313–2314, 76 L.Ed.2d 515 (1983).

Examples of such provisions are sections 543 ("Turnover of property by a custodian"), 547 ("Preferences"), and 548 ("Fraudulent transfers and obligations"). *Id.* at n. 10, 103 S.Ct. at n. 10. Despite provisions restoring the right of possession to a trustee, the Bankruptcy Code does not create an interest in property if the debtor never held such an interest. "[I]nterests of the debtor are 'created and defined by state law.' " *Wilson v. Bill Barry Enterprises, Inc.*, 822 F.2d 859, 861 (9th Cir.1987) (quoting *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)).

It is undisputed that, on the date of his death, Harry Jackson was the owner of the ring which had been deposited with Defendant. Did the debtor have an interest in Harry Jackson's ring following his death? With respect to personal property, the Supreme Court of Ohio has long held that personal property does not vest in a decedent's heirs at the time of death:

1. As a general rule administration is a prerequisite to the devolution of the personal estate of a decedent.

2. The personal property of a deceased person does not vest in his heirs but is in abeyance until administration is granted and is then vested in the administrator by relation from the time of death, and no right of action on a promissory note belonging to a decedent person is shown by a party in an action on the note by proof of possession and that he is the sole heir of the decedent. *McBride v. Vance*, 73 Ohio St. 258, 76 N.E. 938 (1906).

Similarly and more recently, the Supreme Court of Ohio has held that,

[t]he title to personal property of a deceased person passes to his personal representative, his executor or administrator, pending the settlement of the estate whether he dies testate or intestate. The *Winters National Bank & Trust Co. v. Riffe*, 2 Ohio St.2d 72, 206 N.E.2d 212 (1965).

The court also observed that,

"[a]fter the debts are paid, the balance of the personal property is either divided in kind, pursuant to the terms of the will, or is reduced to money and then divided, all in accord with the orders of the probate court." *Id.*, 206 N.E.2d at 216 (quoting *DuVall v. Faulkner*, 113 Ohio St. 543, 545, 149 N.E. 868).

Here, the ring would be subject to paying the debts of Harry Jackson, the owner of the ring, before the debtor or any other heir could receive any benefit from the ring. The court is not unmindful that a dishonest debtor could simply postpone administration of a decedent's estate until the debtor's bankruptcy proceedings are complete and then attempt to receive a distribution from the decedent's estate. It may well be, under certain circumstances, that an heir's anticipated distribution is sufficient to qualify as some type of equitable interest for bankruptcy purposes. For the trustee to prevail in the instant matter he must show that the debtor's "interest" in decedent's property has some value and that the debtor's actions surrendered that value for less than a reasonably equivalent value.[1]

---

1. In the event that the ring was subject to a $7,000 lien, the court fails to discern how the ring could have any value to decedent's heirs.

It was the "possible" right to receive the ring, after probate proceedings, that was given up by the debtor—not the ring itself. The trustee asserts that the ring itself became property of the bankruptcy estate under the broad definition of estate property. Although estate property is broadly defined, the Bankruptcy Code, as stated above, does not create rights and interests that never existed. In *Whiting Pools,* upon which the trustee relies for a broad interpretation of estate property, the Court concluded that "the reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization." 462 U.S., at 208–209, 103 S.Ct. at 2315. Although the case granted greater "possessory" rights to the trustee than those held by the debtor prior to the filing of the bankruptcy petition, the case did not grant to the trustee any rights that the debtor had never possessed. The trustee's reading of *Whiting Pools* is too broad. The Bankruptcy Code does not displace a state's laws of descent and distribution. The effect of state probate proceedings upon the title and value of a decedent's property cannot be ignored in this court. Further, the trustee should be prepared to offer legal authority for his view that the debtor even had the "right to redeem" the ring. Although Defendant offered the debtor the opportunity to redeem the ring, that offer does not establish the existence of a legal right to redeem.

In short, the trustee bears the burden of proof under Bankruptcy Code Section 548 and must be able to show that debtor gave up something of value and that she would have been the recipient of that value absent her declining to redeem the ring.

With respect to the trustee's allegations of a preferential transfer to Defendant, the provisions of Section 547 are plainly inapplicable. There is nothing before the court to indicate that there was ever "an antecedent debt owed by the debtor before such transfer was made" as required by Section 547(b)(2). Any antecedent debt was owed by the decedent, Harry Jackson, and not by the debtor.

For the foregoing reasons it is hereby ORDERED that the motions of plaintiff and defendant for summary judgment are DENIED.

