846 F.2d 267
 56 USLW 2666, 17 Bankr.Ct.Dec. 1085
 In re A.H. ROBINS COMPANY INCORPORATED, Debtor.
WASHBURN & KEMP, PC, Appellant,
v.
COMMITTEE OF DALKON SHIELD CLAIMANTS: Class Action
Claimants, Appellees,
United States of America; Securities and Exchange
Commission: Legal Representative, Future Tort
Claimants, Appellees,
A.H. Robins Company, Incorporated, Appellee,
Official Unsecured Creditors' Committee, Appellee,
Official Committee of Equity Security Holders; Norman E.
Oliver, Trustee, Appellees.
 No. 87-2592.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 2, 1987.
Decided May 17, 1988.
 
 Michael Paul Falzone (Everette G. Allen, Jr., Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., on brief) for appellant.
 Stanley Knight Joynes, III (Rilee, Cantor, Arkema & Edmonds, Richmond, Va., Mark C. Ellenberg, Caldwalader, Wickersham & Taft, Washington, D.C., Harold S. Novikoff, Wachtell, Lipton, Rosen & Katz, New York City, on brief), for appellees.
 Walter Scott Street, III (A. Peter Brodell, Williams, Mullen, Christian & Dobbins, Richmond, Va., John G. Harkins, Jr., Deborah F. Cohen, Pepper, Hamilton & Scheetz, Philadelphia, Pa., on brief), for amicus curiae, the Aetna Cas. and Sur. Co.
 Before RUSSELL, WIDENER, and CHAPMAN, Circuit Judges.
 DONALD RUSSELL, Circuit Judge.
 
 
 1
 The avalanche of Dalkon Shield litigation over the last decade or so became so vast as to force the manufacturer, A.H. Robins Company, Inc. (Robins), to file a petition for reorganization under Chapter 11 of the Bankruptcy Code on August 21, 1985. In the processing of this bankruptcy, a number of novel and troublesome issues, resulting in a number of appeals to this court, have arisen. We confront another of such issues in this appeal.
 
 
 2
 The issue posed by this appeal arises out of a claim of Washburn & Kemp, P.C. (Washburn), a California law firm retained by The Aetna Casualty and Surety Company (Aetna), Robins' products liability insurance carrier, to defend a Dalkon Shield suit against Robins in the United States District Court in California prior to the filing of Robins' petition for reorganization. This employment of Washburn by Aetna was pursuant to Aetna's obligation under its contract to defend on behalf of Robins Dalkon Shield suits against the latter. It seems agreed that Aetna had such an obligation, but in 1984 a dispute arose between Aetna and Robins "whether the fees and expenses incurred by defense counsel ('defense costs') [in Dalkon Shield suits] were chargeable to Robins' coverage limits under the Aetna policies." This dispute was resolved by a Settlement Agreement between Aetna and Robins, dated October 31, 1984. Under this Settlement Agreement Aetna agreed to make "$70,000,000.00 available to Robins beyond the face value of the Aetna policies" and Aetna was permitted "to charge defense costs incurred in insured cases against the enhanced policy limits."[1] Washburn, however, was ignorant both of what rights Aetna might have for reimbursement by Robins or of the execution or terms of the Supplemental Agreement. Its contract of retainer was solely with Aetna, to which it looked for payment of its charges and to which it submitted periodically its bill for services.
 
 
 3
 Prior to the bankruptcy proceedings herein Washburn had rendered services and incurred expenses in the defense of the Dalkon Shield suit which it had been retained to defend by Aetna. It demanded payment of Aetna for these services and expenses. Aetna did not dispute the propriety or reasonableness of Washburn's bill for services and expenses. Aetna had previously had a similar demand by the law firm of Bronson, Bronson & McKinnon (Bronson) for services rendered by it in defending another Dalkon Shield suit. When Aetna did not pay its bill, Bronson sued Aetna in the United States District Court of California. Robins filed in the bankruptcy court a motion to enjoin the maintenance of the suit by Bronson. The stay was denied and Bronson obtained judgment in the California court. Bronson and Aetna then jointly petitioned the bankruptcy court for leave to pay the judgment on conditions. The bankruptcy court granted the petition on these conditions:
 
 
 4
 All payments by Aetna of Bronson's claims against Aetna shall be without prejudice to Aetna's claim to recoup or set off the payment against Robins' insurance coverage or additional funds made available to Robins under the 1984 Settlement Agreement between Robins and Aetna, and they are further without prejudice to the right of Robins or any other party in interest to dispute or contest Aetna's claim to such recoupment or set off.
 
 
 5
 After making any payment of Bronson's claims against Aetna, Aetna shall not charge Robins insurance coverage or additional funds made available to Robins under the 1984 Settlement Agreement between Robins and Aetna without further order of this Court.
 
 
 6
 Aetna accordingly paid Bronson's claim with the conditions stated.
 
 
 7
 Washburn had in the meantime filed its suit in July, 1986, in the California United States District Court to recover of Aetna its bill for services and expenses. While the matter was pending in the California court, the order by the bankruptcy court approving the payment of the Bronson claim had been entered. Aetna filed a motion in the bankruptcy court for leave to pay the Washburn claim on the same terms and conditions as set forth in the order approving the payment of the Bronson claim. Aetna's motion also alleged that there were other claims similar to those of Washburn and Bronson outstanding and asked for leave to pay those claims as well on the same conditions. The Legal Representative of the Future Tort Claimants responded to this motion of Aetna by urging the bankruptcy court to enter "an order making the Co-Defendant Stay Order applicable to the claims of attorneys, law firms, court reporters, and other legal support services for services rendered to or on behalf of the debtor, A.H. Robins Company, Incorporated, prior to the filing of the Chapter 11 petition herein." As phrased by Robins in its answer to the motion the Legal Representative's "central objection to the entry of the proposed order is that permitting payment of Defense Counsel's defense costs at this time is unfair" to the Dalkon Shield claimants. In Robins' view, as formally stated to the bankruptcy court in this matter, the position of the Legal Representative was "the product of a superficial analysis of the situation" and it proceeded to set forth its own solution of the problem posed by Aetna's motion:
 
 
 8
 If, (a) the amount of defense costs is disputed between Aetna and Defense Counsel and (b) resolution of that dispute must involve Robins, then such payments should be enjoined. On the other hand, if those claims are uncontested in amount, Aetna's payment of these defense costs presents no threat to the Chapter 11 estate or the administration of this case and should be permitted under the terms of the proposed order.
 
 
 9
 The bankruptcy court denied Aetna's motion and, on an application for rehearing of that denial, it reaffirmed its denial, saying that it would approve Aetna's payment if "Aetna agree[d] to stand in exactly the same shoes as the lawyers," and adding that if Aetna "want[s] to go ahead and pay these lawyers and it ultimately ends up if they had a claim directly against Robins and they only got 90 percent, that is as high as your claim can be against Robins whether you call it set-off or anything else." Aetna refused to make payment under the stated conditions and the bankruptcy court refused to set aside its denial of Aetna's petition. From that denial, this appeal follows. We reverse.
 
 
 10
 Before addressing the merits of the appeal, we are confronted with an argument over the standard of review of a decision of the bankruptcy court. Implicit to this argument is the identification of the actual decision from which appeal is taken. It is the contention of the appellees that the appeal is simply from the bankruptcy court's denial of reconsideration of its earlier order denying the joint motion of Aetna and Washburn to waive the court's previous stay herein and to permit Aetna to pay Washburn's claim, reserving its right of recoupment from Robins under the terms of Aetna's policy. So limited, the appeal is to be reviewed under a standard of abuse of discretion. Ordinarily, this argument might warrant earnest consideration but, in the context of this bankruptcy proceeding as a whole, such limited review would not promote efficient administration of the proceedings. Should we opt for disposing of this case on the narrow base urged by the appellees, we would merely be inviting the hundred or more other service providers in similar circumstances as Washburn to file their actions. We conclude that orderly administration compels us to determine the issues in this case on their merits once and for all, thereby making unnecessary countless other applications for relief, and that we shall do.
 
 
 11
 We begin our discussion of the merits of this appeal by noting at the outset that Washburn has no claim against Robins. We repeat that Washburn's representation of Robins in the Dalkon Shield suit was under employment solely by Aetna, which had selected Washburn for the defense of the suit, and which had solely undertaken to pay Washburn for the latter's service. Washburn was not privy to the contract under which Aetna had undertaken to provide a defense for Robins in the action and was ignorant of any limitations or conditions under which Aetna had agreed to defend the suit on behalf of Robins. Its rights cannot, therefore, be affected by any agreement between Aetna and Robins, of which it was ignorant and by which it was not bound. Nor is Washburn concerned with Robins' bankruptcy, certainly as it concerns Aetna's obligation to pay for Washburn's representation under Aetna's employment of Washburn. Whatever may be the result of the debtor reorganization, Washburn itself has to look solely to Aetna for payment for its services. Aetna is liable to Washburn for the latter's services, whether Aetna is entitled to offset such payment against Aetna's liability under its liability policy given Robins and whether it is entitled to recoupment from Robins or not. What rights Aetna may have to recoup or offset the payments made by it to attorneys employed by it to defend the Dalkon Shield claimants prior to bankruptcy against Robins and what priority such claim is to be given is a matter to be determined under the Special Agreement executed by Robins and Aetna, as that Agreement may be construed in the bankruptcy proceedings. But that question is unrelated to the right of Washburn to be paid for its services rendered under its agreement with Aetna.
 
 
 12
 The Legal Representative of the Future Tort Claimants, however, objects to such approval. We do not perceive that Aetna's being allowed to make payment on its independent obligation to pay Washburn for its services, the enforcement of which obligation is unrelated to the right of Aetna to recoup that payment from Robins, conflicts with our decisions in A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994 (4th Cir.1986); cert. denied, --- U.S. ----, 107 S.Ct. 251, 93 L.Ed.2d 177 and Oberg v. Aetna Casualty & Surety Co., 828 F.2d 1023 (4th Cir.1987). In Piccinin, the bankrupt and its co-defendants were joint tortfeasors, charged with liability under the same facts. The interests of the co-defendants were so intertwined with those of the debtor that, as we said, the suits could in fact be regarded actually as a suit or claim against the debtor itself. See 788 F.2d at 999. Moreover the action against Aetna in Piccinin and Oberg would involve trying substantially the same claim on the same facts with largely, if not entirely, the same witnesses as would be required in proving the claims of the Dalkon Shield suitors in the bankruptcy proceedings. See 788 F.2d at 1006. One of the reasons assigned in Oberg for monitoring the stay in the bankruptcy reorganization proceeding was the burden on the officers of the debtor in being required to testify and follow the trial of each separate case during the reorganization proceedings. We found that this involvement of the debtor's officers in the other proceeding would "put a substantial burden on Robins ... [and] would detract from the reorganization process." 828 F.2d at 1026. Unlike those cases, however, the claim of Washburn against Aetna is based, as we have noted, on a contract between Aetna and Washburn, to which Robins was not a party and by which Robins was not bound. There will also be no involvement of Robins' employees and officers in the liquidation of Washburn's claim against Aetna so no such harm as was perceived in Oberg for continuing the stay exists here. See 828 F.2d at 1026. After all, Washburn's claim is undisputed by Aetna, which is Washburn's debtor.
 
 
 13
 The claim of Washburn against Aetna is manifestly a claim different from those sought to be asserted against Aetna in Piccinin and Oberg. Normally section 362 of the Bankruptcy Act does not operate to stay actions against others than the debtor unless it is found that it is "necessary or appropriate in order to achieve the goals of a Chapter 11 reorganization." Matter of Johns-Manville Corp., 26 B.R. 405, 409-14 (Bkrtcy.S.D.N.Y.1982), cited with approval in Piccinin at 1004. This case does not qualify as such an exception. Whether Aetna, upon making payment in this case, should be entitled to offset that payment against the amount of its liability under its policy is, as we have said, a question to be resolved later in the bankruptcy court in the reorganization proceeding of Robins.[2]
 
 
 14
 In any event, however, Aetna asserts it should not as a matter of law be prejudiced in its offset claim by now making payment to Washburn for its liquidated debt nor should Washburn be delayed in the liquidation of its undisputed claim against Aetna. Actually, Aetna asks that the stay be removed so that it can make payment of its liquidated indebtedness to Washburn and thereby stop any possibility of being mulcted in interest for failure to pay when due a liquidated debt, and that the court hold that such payment may be made without prejudice to the right of Aetna, under its contract with Robins, to offset such payment against the total coverage in amount which it had undertaken to provide Robins in defending the Dalkon Shield claims in the bankruptcy proceedings. Such is the position of Aetna, in the assertion of which it is supported by Robins.[3]
 
 
 15
 In summary, we are of opinion that the stay heretofore issued by the district court enjoining the payment of Aetna's liquidated debt to Washburn, based on a contract between Aetna and Washburn to which Robins was not a party and by which it was not bound, and being a debt for which Aetna was unqualifiedly due to pay, should be dissolved.
 
 
 16
 It is obvious that our decision in this appeal is substantially what the district court, sitting in bankruptcy, did in disposing of the similar claim of Bronson. In short, we think the district judge reached the correct result in Bronson and that same result should apply to the claim of Washburn.
 
 
 17
 The decision of the district judge, sitting in bankruptcy herein, refusing to dissolve the stay against payment by Aetna of its debt to Washburn is accordingly reversed and the stay, so far as it may apply to such claim, is dissolved, without prejudice to such right, if any, that Aetna may have to offset such payment in the bankruptcy proceeding against the amount of its coverage to Robins under its policy covering the Dalkon Shield litigation.
 
 
 18
 REVERSED AND REMANDED.
 
 
 
 [1]
 This summary of the Settlement Agreement is taken from the memorandum filed by Robins in connection with Aetna's application to pay Washburn's claim and like claims
 
 
 [2]
 For a discussion of set-off and recoupment in bankruptcy, see 4 Collier on Bankruptcy, Para. 553.03 at 553-12 (15th ed. 1983); In re Midwest Service and Supply Co., Inc., 44 B.R. 262, 265-66 (N.D.Utah 1983). The right of offset in favor of Aetna against any claim of Robins would be a matter of construing the contract between Aetna and Robins (with which Washburn was not concerned) and what status, if any, the claim of offset by Aetna (if allowable under the contract between Aetna and Robins) would occupy in the reorganization would be a question to be resolved in the bankruptcy proceedings
 
 
 [3]
 See the language in Robins' brief filed by the bankruptcy court quoted at App. 134 wherein it concludes:
 ... if those claims are uncontested in amount, [Washburn's claim is not contested in amount], Aetna's payment of the defense costs presents no threat to the Chapter 11 estate or the administration of this case and should be permitted under the terms of the proposed order.