**OWENS CORNING FIBERGLAS CORPORATION, Defendant Below, Appellant,**

v.

**Patricia CARTER, Personal Representative of the Estate of Arthur W. Carter, Deceased and Patricia Carter, Surviving Spouse of Arthur W. Carter, Deceased, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 13, 1993.
Decided: Sept. 21, 1993.

Armand J. Della Porta, Jr., Kelley, Jasons, McGuire & Spinelli, Wilmington, and Larry Simms, Gibson, Dunn & Crutcher, Washington, DC, for appellant.

Michael T. Ward, Law Offices of Peter Angelos, Wilmington, for appellee.

HOLLAND, Justice:

The defendant-appellant, Owens Corning Fiberglas Corporation ("OCF"), has filed a Motion with this Court for an Emergency Stay of Proceedings in the Superior Court. Supr.Ct.R. 32(a).[1] In its motion, OCF seeks a stay of execution on a Superior Court judgment in favor of the plaintiff-appellee, Patricia Carter ("Carter"), for money damages in the amount of $2,500,856. Carter has filed an Answer and a Motion to Dismiss.[2]

OCF's Motion to Stay Proceedings was initially denied by the Superior Court on July 19, 1993 (the "July 19 Order"). In the July 19 Order, the Superior Court found that "developments in asbestos litigation have made unexecuted judgments in State courts extremely tenuous." The Superior Court concluded that "Owens Corning Fiberglas Corporation has not posted adequate surety to protect [Carter]'s judg-

ment." OCF's petition for reconsideration was denied by an order entered on August 18, 1993 (the "August 18 Order").

The Superior Court's August 18 Order held that no supersedeas bond posted by OCF would provide Carter with sufficient security to grant a stay of execution during the pendency of an appeal. Accordingly, the August 18 Order denied OCF's Motion to Stay Proceedings unless it paid the full amount of the judgment plus legal interest into the Superior Court by August 25, 1993. The August 18 Order provided, in part:

Such funds [paid into Superior Court] shall be invested in interest-bearing security in the name of the Prothonotary in trust for plaintiffs. Legal interest shall cease upon deposit of the funds into Court and the interest earned thereon shall be property of the plaintiffs in lieu of legal interest. No withdrawal of such funds shall be allowed, but upon order of this Court. Should the judgment of this Court be reversed by the Delaware Supreme Court, then the Court will order the release of the funds held and interest earned thereon to defendant. Should the decision of this Court be affirmed, such funds shall upon order be released to plaintiffs.

In this proceeding, OCF challenges the *ratio decidendi* of the Superior Court judge's order to the effect that "no surety appears completely adequate to assure payment of this judgment." This Court has concluded that the Superior Court's order was an appropriate exercise of its discretion under the circumstances. Therefore, OCF's Motion to Stay is denied.

### Standard of Review

■■■ The Delaware Constitution requires that, as a condition for granting a

---

1. While these proceedings have been pending decision in this Court, on September 3, 1993, Carter caused a Writ of Execution to be served in Allegheny County, Pennsylvania upon Mellon Bank, N.A., attaching OCF bank accounts. According to counsel for both parties, Carter cannot take further definitive action on the Writ of Execution until about September 22.

2. Carter's Motion to Dismiss alleges that OCF has not complied with the procedural require-

ments of Supreme Court Rule 32(c) and that, therefore, this Court should not review the merits of the Superior Court's orders. Rather than resolving the dispute between the parties on the basis of the procedural requirements of Rule 32(c), this Court has addressed the merits of the Superior Court's decision to condition a stay of execution upon OCF's compliance with the terms set forth in its orders.

stay of execution, a court of this State must find that the party seeking the stay has provided "sufficient security" for the judgment. Del. Const. art. IV, § 24. Supreme Court Rule 32(a) states:

> A stay or an injunction pending appeal may be granted or denied *in the discretion of the trial court,* whose decision shall be reviewable by this Court. The trial court or this Court, as a condition of granting or continuing a stay or an injunction pending appeal, *may impose such terms and conditions, in addition to the requirement of indemnity, as may appear appropriate in the circumstances.*

Supr.Ct.R. 32(a) (emphasis added). *See also Ellis D. Taylor, Inc. v. Craft Builders, Inc.,* Del.Ch., 260 A.2d 180, 182 (1969). Accordingly, this Court reviews the Superior Court's refusal to stay execution on a judgment, or its setting of the terms and conditions for such a stay, for abuse of discretion.

■ The propriety of the Superior Court's exercise of discretion, in rejecting the posting of *any* supersedeas bond by OCF, is dependent upon the validity of its three central premises: (1) that OCF is already in a precarious financial situation, which could change adversely during the pendency of an appeal to this Court; (2) that if OCF files for bankruptcy during the pendency of this appeal, an outstanding supersedeas bond would be subject to the power of a federal bankruptcy court to stay the collection of OCF's judgment obligation to Carter, whether such a bond is posted in cash or by a third party as surety; and (3) that a cash deposit into the Superior Court by OCF in trust, as distinguished from a cash supersedeas bond, would protect Carter from a federal stay, in the event OCF filed for bankruptcy. This Court will examine each of those three premises *seriatim.*

### OCF's Financial Condition

In the hearing that preceded the entry of its August 18 Order, the Superior Court was presented with evidence concerning the likelihood of a Chapter 11 bankruptcy filing by OCF during the pendency of an appeal in this Court. The Superior Court set forth its factual findings in the August 18 Order, as follows: OCF's product liability insurance for asbestos-related lawsuits would be exhausted before the end of 1993; OCF was "subject to a leveraged buyout that has incurred substantial debt that must be serviced and ultimately satisfied"; "[a]sbestos judgments and settlements involving [OCF] are progressively increasing"; the "reserve set aside" established by OCF is not a "segregated fund" but merely "a balance sheet entry as potential liability"; and there is a recent trend of frequent "limited fund" class action filings by asbestos defendants, which "if successful, render State court judgments as unenforceable." The record reflects that the Superior Court's first premise, concerning the precarious nature of OCF's financial condition, is supported by the record and is the product of a logically deductive reasoning process. *See Levitt v. Bouvier,* Del. Supr., 287 A.2d 671, 673 (1972).

### Supersedeas Surety Bond Effect of Bankruptcy

The second premise relied upon by the Superior Court, as a basis for the entry of its August 18, Order—that a supersedeas bond is subject to a stay in bankruptcy—appears to be an accurate analysis of recent relevant federal authority. *See, e.g., Raymark Indus., Inc. v. Lai,* 973 F.2d 1125 (3d Cir.1992); *Willis v. Celotex Corp.,* 978 F.2d 146 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993); *Borman v. Raymark Indus., Inc.,* 946 F.2d 1031 (3d Cir.1991). In *Borman,* Celotex Corporation appealed a judgment for money damages in a product liability suit. *Id.* at 1032. The federal district court stayed execution of the judgment when Celotex posted a supersedeas bond, with a third party liable as surety. *Id.* However, after oral arguments on the appeal but prior to disposition, Celotex filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code. *Id.* The Third Circuit stayed the appeal pending either the dismissal of the bankruptcy

proceeding or leave from the bankruptcy court to proceed with the appeal. *Id.*

The plaintiff, in *Borman,* then filed a motion seeking a decision on the merits of the appeal despite the bankruptcy, contending that the automatic stay provision in Section 362(a)(1) did not apply because Celotex had posted a supersedeas bond prior to its bankruptcy filing. *Id. See* 11 U.S.C.A. § 362(a)(1) (1993). The Third Circuit rejected this argument. It held that Section 362(a)(1) "stays pending proceedings brought directly against the debtor, regardless of whether they involve property of the estate." *Borman v. Raymark Indus., Inc.,* 946 F.2d at 1035. The Third Circuit determined that even though the surety is a third party, the "breathing spell" purpose of the automatic stay encompasses collection efforts directly against a debtor "even when the funds to satisfy a judgment may ultimately come from another source." *Id.* at 1036.

The automatic bankruptcy stay of prior judicial proceedings, notwithstanding the fact that a third party is the surety on a supersedeas bond, was also considered by the Fourth Circuit in *Willis v. Celotex Corp.,* 978 F.2d 146 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993). In *Willis,* the court held that because of the surety's independent contractual duty to the creditor, a surety does not have an "identity of interest" with the debtor, and an action against the surety is therefore not a "claim against the debtor" as required under Section 362(a)(1). *Id.* at 148–49 (citing *Washburn & Kemp, PC v. Committee of Dalkon Shield Claimants (In re A.H. Robins Co.),* 846 F.2d 267, 271 (4th Cir.1988)); 11 U.S.C.A. § 362(a)(1). The Fourth Circuit also held that Section 362(a)(3) was inapplicable on the facts presented because, unlike the facts in *Borman,* the appeal in *Willis* was decided prior to the bankruptcy filing. *Willis v. Celotex Corp.,* 978 F.2d at 149. *See* 11 U.S.C.A. § 362(a)(3).

Nevertheless, the Fourth Circuit upheld the stay of execution against the surety on a supersedeas bond, pursuant to the bankruptcy court's broad power under Section 105(a) to " 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.' " *Willis v. Celotex Corp.,* 978 F.2d at 149 (quoting 11 U.S.C.A. § 105(a) (West Supp. 1992)). The court stated:

> While in the usual bankruptcy filing, third-party payments on a supersedeas bond securing a judgment owed by a bankrupt would not affect reorganization, Celotex's is not the usual bankruptcy. We agree with the bankruptcy court that immediate execution against sureties on the supersedeas bond would have been detrimental to Celotex's ability to formulate a plan of reorganization. A hiatus from execution on the bonds was necessary to permit the bankruptcy court to take control of the immense litigation and to examine the underlying tort judgments to establish whether any portion of the awards was voidable.

*Id.* at 149–50. Thus, albeit for reasons that differed from those which the Third Circuit expressed in *Borman,* the Fourth Circuit upheld a stay of execution on a third party surety supersedeas bond, even though the appeal had already been decided in favor of the bonded creditor. *Id.*

### Supersedeas Cash Bond Effect of Bankruptcy

In this Court, OCF has not disputed Carter's contention that an outstanding supersedeas bond, issued by a third party as surety, is subject to the authority of a bankruptcy court stay under Sections 362 or 105 of the Bankruptcy Code. OCF's position is that a cash supersedeas bond paid into Superior Court would not be insulated from bankruptcy proceedings any more than would a third party surety supersedeas bond. Therefore, according to OCF, the Superior Court's order to either pay Carter directly, or deposit the funds with its clerk, is arbitrary and an abuse of discretion.

In support of its position, OCF relies upon *NLT Computer Services v. Capital Computer Systems,* 755 F.2d 1253 (6th Cir. 1985). In *NLT Computer Services,* the Sixth Circuit held that monies paid into

court in the course of an interpleader action were held by the clerk of the court as a "custodian," who "was charged to hold it until the court properly directed how to dispose of it." *Id.* at 1263. "[O]nce bankruptcy had intervened," the court concluded,

> the clerk of the court had a duty as custodian to deliver those funds as property of the debtor to the trustee in bankruptcy for disposition. We believe that the custodian would be so obligated unless the government had actually acquired ownership of the funds prior to the filing of the proceedings in bankruptcy.

*Id.* The Sixth Circuit relied upon *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).[3]

### Payment into Trust
### Effect of Bankruptcy

Assuming, arguendo, that OCF's analysis of the relevant federal bankruptcy authorities on the issue of a stay as applicable to a *cash* supersedeas bond is correct, these authorities are distinguishable from the case *sub judice.* The Superior Court did not order OCF to file a cash supersedeas bond. *See Raymark Indus., Inc. v. Lai,* 973 F.2d 1125, 1126 (3d Cir.1992) (characterizing a "cash supersedeas bond" as a "deposit"). The Superior Court ordered OCF to pay the full amount of Carter's judgment into a *trust* account.

The Superior Court judge, aware of the potential for problems in the event of bankruptcy proceedings when the status of deposited funds is ambiguous, made it clear in the August 18 Order that OCF was to retain no present interest in the deposited funds. Under the terms of the Superior Court's August 18 Order, it would hold the

legal title to OCF's cash payment as trustee for Carter, subject only to possible divestment in the event of a reversal on appeal in this Court. The trust structure of the cash deposit provided for in the Superior Court's August 18 Order was substantially different from a requirement for a cash supersedeas bond.

Consequently, the Superior Court judge's third premise, that the trust fund it required affords Carter greater protection than a supersedeas bond, although perhaps not complete assurance of collecting on her judgment in the event of OCF's bankruptcy, is supported by the record. This Court recognizes that the Fourth Circuit's decision in *Willis* held that status as "property of the estate" is not a *sine qua non* to the exercise of the general authority granted under Section 105(a) by the bankruptcy court to stay collection actions against third parties. *See Willis v. Celotex Corp.,* 978 F.2d at 149–50; 11 U.S.C.A. § 105(a) (1993). However, the possibility that the Superior Court trust fund could be subject to seizure by the bankruptcy court under the catch-all provision in Section 105(a), when it would not otherwise be turned over under Section 543(b)(1), is remote.[4]

### Conclusion

The August 18 Order of the Superior Court constituted a reasonable exercise of the Superior Court's discretion, under the circumstances presented to it, to establish "terms and conditions" for "sufficient security" to Carter, as a condition precedent to granting OCF's request for a stay of execution. Del. Const. art. IV, § 24; Supr. Ct.R. 32(a). The decision of the Superior Court to deny OCF's Motion to Stay Proceedings is AFFIRMED. Supr.Ct.R. 32(a).

---

**3.** The property interest held by the creditor in *Whiting Pools* was a tax lien. 462 U.S. at 209–11, 103 S.Ct. at 2316–17. The legal title was retained by the debtor at the time of the filing of the bankruptcy petition. *See id.* Therefore, in *Whiting Pools* the Supreme Court held that the assets were clearly "property of the estate" and subject to turnover under Section 542(a). *Id.* at 209–11, 103 S.Ct. at 2316–17; 11 U.S.C.A. § 542(a) (1993). *See · also* 11 U.S.C.A. § 541(a)(1) (property of the estate includes

"wherever located and by whomever held ... all legal or equitable interests of the debtor in property as of the commencement of the case").

**4.** Section 543(b)(1) is the Bankruptcy Code provision requiring *custodians* to turn over property of the estate to the trustee in bankruptcy. 11 U.S.C.A. § 543(b)(1). Section 542(a), on the other hand, requires entities *other than custodians* to do so. *Id.* § 542(a).

Accordingly, OCF's Motion to Stay in this Court is DENIED.