# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KAREN CALLAHAN,       )
      )
      Appellant,       )      C.A. No. N23A-09-002 CEB
      )
      )
      v.       )
      )
JOSEPH NELSON,       )
      )
      Appellee.       )

## MEMORANDUM OPINION

Submitted: February 6, 2024
Decided: May 29, 2024

*Upon Appellant's Appeal from Court of Common Pleas*
**AFFIRMED.**

Chandra J. Williams, Esquire, Rhodunda, Williams and Kondraschow, Wilmington, Delaware. *Attorney for Appellant.*

Josiah R. Wolcott, Esquire, Connolly Gallagher, Newark, Delaware. *Attorney for Appellee.*

**BUTLER, R.J.**

## FACTS AND PROCEDURAL HISTORY

This is an appeal from a judgment of the Court of Common Pleas ("CCP"). The object of the dispute is a pet dog. The pet is a beloved Goldendoodle, acquired by the one-time couple of Joseph Nelson ("Nelson") and Karen Callahan ("Callahan"). They are no longer a couple and, while the other property has been amicably divided, the dog has not.

How the pet came to reside with Nelson and Callahan is where the dispute begins. The parties were residing together in Nelson's home. Nelson's daughter, Janelle Nelson, was a veterinarian at a facility called Dogs and Cats in Bowie, Maryland. The dog was surrendered to the facility by its previous owners. Janelle knew that her father's dog had passed away and it occurred to her to gift the recently surrendered dog to her father and his girlfriend. The dog was ill when received by Dogs and Cats and Janelle assumed financial responsibility for the dog's health. In April, 2020 Callahan paid $644 to Dogs and Cats and brought the dog home.[1] There was some testimony that Nelson intended to use his company credit card to purchase the dog, and only later realized that Callahan had made the purchase using her personal card.

---

[1] A234-245; A263-291. Appendix to Appellant's Opening Brief is cited "A___."

The dog resided in the former couple's home in Bear, Delaware. Nelson and Callahan shared in the costs and efforts to maintain the dog, but the pet was originally registered only to Callahan through Pethub.[2]

In May 2022, the Nelson/Callahan relationship ended, and Callahan moved out. Callahan attempted to bring the dog with her, but Nelson refused, holding the dog in his vehicle.[3] The parties agreed that Callahan could return to the home to retrieve the remainder of her personal property, but was unable to retrieve the dog.[4]

Whereupon, Callahan filed a Petition for Replevin in the Justice of the Peace ("JP") Court, seeking possession of the dog, among other things that have since been settled.[5] Nelson received service of the Justice of the Peace ("JP") Court Complaint and Notice of the pending action on June 15, 2022. The summons contains an injunction that states:

> "IN REPLEVIN ACTION: You are hereby ordered not to intentionally destroy, damage, sell, or conceal the property in question. A violation of this Order could result in a Civil Contempt being issued against you, in accordance with 10 Del. C. § 9506."[6]

There followed a trial in October, 2022 in JP Court.

---

[2] A322-332 (PX09).
[3] A456 (Tr. Day 1).
[4] *Id.*
[5] A016-021.
[6] A195.

On December 7, 2022, the JP Court issued a Notice of Judgment, which ruled that Callahan was the rightful owner of the dog.[7] Later that day, Callahan attempted to take possession of the dog from Nelson.[8] But at some point during the pendency, Nelson had brought dog to Virginia, arguably in violation of the injunction. That begat a whole new dispute over sanctions against Nelson for removing the dog, about which we will say more presently.[9]

The very next day, Nelson filed a Notice of Appeal and a motion to stay execution of the JP Court judgment in the Court of Common Pleas.[10] For her part, Callahan filed a Motion in the JP Court to enforce the JP Court judgment granting her replevin. The JP Court clerk refused to accept Callahan's motion, reasoning that Nelson had already filed his appeal to CCP.[11] The JP court clerk ultimately refused to issue a writ of replevin, citing the pending appeal.[12]

On January 3, 2023, Callahan filed her *de novo* Complaint for replevin in CCP, seeking possession of the dog. Meanwhile, CCP heard arguments from both parties on Nelson's motion to stay execution of the JP judgment.[13] The motion to

---

[7] A025-032.

[8] While the ruling went her way, Callahan did not acquire a right to self-help and immediate possession. The decision had been rendered, but the actual writ of replevin had not yet been issued when Nelson filed his appeal. *See generally* Justice of the Peace Court Civil Rule 69(e) (replevin is executed by the constable, not the prevailing party).

[9] Appellant's Op. Br. at 12.

[10] A109-113.

[11] Plaintiff's Op. Br. at 13; A118-210 (Mot. Sanctions).

[12] A013.

[13] A148-180.

stay was granted by CCP, meaning Nelson would keep the dog upon posting a supersedeas bond.[14]

Then in June 2023, CCP heard argument on a motion for sanctions against Nelson for removing the dog in derogation of the JP Court's Order. CCP dismissed that motion on jurisdictional grounds, holding that CCP could not sanction Nelson for ignoring a JP Court Order.[15]

A two-day trial on the merits then ensued in CCP. In August, 2023, CCP ruled in favor of Nelson, finding that Callahan could not obtain replevin because the dog was jointly owned by both Nelson and Callahan.[16] Callahan then filed this appeal.

**I. The lower court's finding of joint ownership of the property was supported by the evidence. Joint owners may not have replevin against each other.**

## STANDARD OF REVIEW

"When sitting as an intermediate court of appeals, and unless otherwise mandated by statute, the Superior Court's function basically is the same as" that of the Supreme Court of Delaware.[17] This Court must determine "whether the factual findings made by the trial judge are adequately supported by the record and are the

---

[14] A001-003.
[15] Trial Tr. 4:14-25:5 Day 1.
[16] A004-012.
[17] *Baker v. Connell*, 488 A.2d 1303, 1309 (Del. 1985).

4

product of an orderly and logical deductive process."[18] "Findings of the trial court which are supported by the record should be accepted even if the reviewing court, acting independently, would reach a contrary conclusion."[19] For errors of law, the standard of review is *de novo*.[20]

## ANALYSIS

While dog owners and lovers may shudder at the thought, a dog has the same legal status as a "piece of furniture."[21] It is true that in practice, parties do not treat them as such. Rather, pets can be a point of contention – particularly in breakups -- that far surpasses family heirlooms.

Replevin is an action that seeks recovery of personal property that has been wrongfully taken or withheld from the owner.[22] Plaintiff in a replevin action must show, by a preponderance of the evidence, that s/he has a right to immediate possession of the property.[23]

---

[18] *Massey v. Nationwide Assurance Co.*, 2018 WL 4692488, at *2 (Del. Super. Sept. 28, 2018).
[19] *Wyatt v. Motorola, Inc.*, 1994 WL 714006, at *2 (Del. Super. Mar. 11, 1994).
[20] *Robert J. Smith Companies, Inc. v. Thomas*, 2001 WL 1729143, at *2 (Del. Super. Dec. 10, 2001).
[21] *Conte v. Fossett*, 2013 WL 1143329, at *3 (Del. Super. Mar. 19, 2013); *see also Naples v. Miller*, 2009 WL 1163504, at *2 (Del. Super. April 30, 2009). Interestingly, had Callahan and Nelson been married, Family Court has a specific statute listing the criteria to be considered in disposition of family pets. *See* 13 *Del. C.* § 1513(g) (setting forth factors to be considered in marital property division that includes a family pet).
[22] *Jarvis v. Elliott*, 2010 WL 761089, at *4 (Del. Ch. Mar. 5, 2010).
[23] *Conte v. Fossett*, 2013 WL 1143329, at *2 (Del. Super. Mar. 19, 2013); *Jarvis v. Elliott*, WL 761089, at *4 (Del. Ch. Mar. 5, 2010); *Stafford v. Williams*, 76 A. 626 (Del.Super. 1910); *see also Fred J. Jensen & Sons, Inc. v. Coverdale*, WL 660103, at *2 (Del. Super. Apr. 27, 2001) (replevin denied when defendant had as much right to the "dozer" as the plaintiff").

5

Replevin cannot be granted when sought by the joint owner of a chattel.[24]

The distinction between trespass, where damages can be had, and replevin, where they cannot, is that replevin cannot be had on something that cannot be divided. Going back to 1832, a Delaware court said, replevin:

> "cannot lie for an undivided part of a chattel, for specific possession cannot be had of such a share; nor can any delivery of it be made. The sheriff is commanded to deliver possession of the thing; he cannot divide it, for his functions are ministerial merely, and not judicial; neither can he deliver the whole, for that would be a wrong to another. No judgment therefore can be rendered on this verdict."[25]

*Conte v. Fosset* was a case decided by this Court on remarkably similar facts. Another boyfriend/girlfriend breakup, another fight over custody of the dog. There, the JP Court denied replevin, finding the dog to be joint property for which replevin could not be issued. In the *de novo* appeal, CCP, expanding on the principle of "gifts in contemplation of marriage,"[26] ruled that the boyfriend should get replevin because the gifted dog was given in contemplation of a "continued

---

[24] *Conte v. Fossett*, 2013 WL 1143329, at *2 (Del. Super. Mar. 19, 2013).

[25] *Ellis v. Culver*, 1 Del. 76 (Del. Super. 1832). *See also Fell v. Taylor*, 45 A. 716 (Del. Super. 1900) ("all the joint owners of the chattel must join in replevin"), *Fred J. Jensen & Sons, Inc. v. Coverdale*, WL 660103, at *2 (Del. Super. Apr. 27, 2001) (replevin must be denied when defendant had as much right to the "dozer" as the plaintiff").

[26] The law of gifts in contemplation of marriage permits the recipient to retain the gift if the marriage does not come to fruition, so long as the recipient is not at fault. *See* Restatement of Restitution, §58(c). *See also Elliott v. Hunter*, 1967 WL 90379 (Del. Super. June 19, 1967) (dog gifted to fiancé was not conditional upon marriage and therefore not retrievable by putative husband when marriage called off).

relationship." Superior Court refused to expand the "contemplation of marriage" principle and reversed the CCP ruling, denying replevin for jointly owned property.

In this case, CCP followed an "orderly and logical deductive process"[27] in finding joint ownership.[28] Nelson's daughter testified that she originally put the dog in her name to administer needed care and in order to gift the dog to Nelson. Nelson's daughter told the former couple about the dog in the shelter. Nelson's daughter placed Nelson's name as the dog's owner on the rabies certificate.[29] It was certainly among the possible findings of the trial court that the dog was intended to be gifted by his daughter to Nelson and not to Callahan.

Additionally, both parties provided care and financial support for the dog.[30] Both parties acknowledged the dog's importance in the other parties' life.[31] Callahan listed Nelson as co-owner on the Summit Bridge Veterinary Hospital patient registration form.[32]

Callahan's other arguments also fail to persuade. Callahan says that 16 *Del. C.* §3071F(6) defines the "Owner" of a dog as "any person who owns, keeps, harbors, or is the custodian of a dog." That is true, but proves nothing, as the dog

---

[27] *Massey v. Nationwide Assurance Co.*, 2018 WL 4692488, at *2 (Del. Super. Ct. Sept. 28, 2018).

[28] *Callahan v. Nelson*, Del. CCP, C.A. No. CPU4-22-002787, Horton, J. (Aug. 11, 2023) (Hereafter "Lower Court Opinion") (A007, 009).

[29] Lower Court Opinion at 6 (A009).

[30] Lower Court Opinion at 8 (A011).

[31] *Id.*

[32] Lower Court Opinion 8-9 (A011-12).

resided in what was then a joint household.  She says that 16 Del. C. §3042F requires dogs to be licensed by their "owner" and she obtained the license.  Again, true, but her obtaining the license only obviated Nelson's need to do so.  The mere fact that she did so in her name is hardly dispositive of the joint ownership issue.  Other required registrations listed Nelson only or Nelson and Callahan as the owner.[33]

The CCP record yields no grounds for finding that the Court's process or conclusions were less than "orderly."[34] CCP found Nelson had a joint ownership interest with Callahan.  Replevin is not available to joint owners.  Those findings were adequately supported by testimony and this Court cannot second guess those findings on appeal.

## II.  CCP did not abuse its discretion when issuing the stay order.

### STANDARD OF REVIEW

Review of a lower court's decision to enter a stay of execution of an order is abuse of discretion.[35] " An abuse of discretion occurs when a court has exceeded the bounds of reason in light of the circumstances, or so ignored recognized rules

---

[33] Lower Court Opinion at 6 (A009); Summit Bridge Patient Registration Form (A026); Rabies Certificate (A239).

[34] *Massey v. Nationwide Assurance Co.*, 2018 WL 4692488, at *2 (Del. Super. Ct. Sept. 28, 2018).

[35] *Owens Corning Fiberglas Corp. v. Carter* 630 A.2d 647, 649 (Del. 1993); *see also* Court of Common Pleas Civil Rule 62(c) (. . . the Court of Common Pleas may, upon motion of the appellant, stay execution . . .).

of law or practice so as to produce injustice."[36]

## ANALYSIS

Callahan argues that the day the JP Court issued its judgment she had an immediate right to possession of the dog and that but for Nelson's improper action in taking the dog to Virginia, she would have been in possession, despite Nelson's right to appeal, which he exercised the following day. But her complaint is much more about Nelson's actions in removing the dog from Delaware in violation of the JP Court injunction than it is about CCP's decision to leave the parties in *status quo* once CCP obtained jurisdiction.

Callahan fairly notes that CCP did not make a fulsome inquiry into the 4-part test enunciated in *Kirpat, Inc. v. Delaware Alcoholic Beverage Control Comm'n*.[37] That case dealt with the criteria for issuing a stay pending appeal. This case involves a stay of execution of a JP Court order in replevin while the matter is pending trial *de novo* in CCP. Even on Callahan's best arguments, ownership of the dog was ambiguous, both parties would likely be similarly "harmed" by placement in either home and it is unlikely that a more fulsome analysis under

---

[36] *McNair v. State*, 990 A.2d 398, 401 (Del. 2010). There was some argument in the briefs as to the correct standard of review here. Because CCP "may" issue a stay, its decision is in its discretion and should be given deference. *See* Court of Common Please Rule 62(b).
[37] 741 A.2d 356 (Del. 1998). Lower Court Stay Opinion, A001-003.

9

*Kirpat* would have yielded a different result.[38]

Moreover, *Kirpat* was an unusual case – a Supreme Court decision on an interlocutory appeal of the denial of a motion to stay by the intermediate appellate court. While useful as guidance on the criteria for a stay, it is of little use to Callahan here. CCP's right to issue a stay to retain the *status quo* while it considered the merits of the dispute is not questioned. The Court's stay of execution of the JP Court order for replevin was, in effect, a *status quo* order. There was no interlocutory appeal. This Court cannot reverse a stay granted below pending resolution of the merits after the merits have been resolved. Once the merits were decided, the stay became moot. Whether CCP got the stay question right or wrong at this point is of no moment. It will not change the ruling on the merits, which this Court has affirmed.

**III. CCP did not have jurisdiction to hear the motion for sanctions because that right was reserved to the Justice of the Peace Court.**

## STANDARD OF REVIEW

The standard of review of the denial of a motion on jurisdictional grounds is a question of law, addressed *de novo*.[39]

---

[38] Defendant at Oral Argument (A160-161).
[39] *Robert J. Smith Cos., v. Thomas*, 2001 WL 1729143, *2 (Del. Super. Ct. 2001).

10

**ANALYSIS**

CCP found that it did not have jurisdiction to administer sanctions of a JP Court order. While CCP has "broad" contempt powers over its own orders,[40] its jurisdiction over the Orders of other courts orders is limited.[41]

It may well be, as Callahan complains, that Nelson's removal of the dog from Delaware while the JP court action was pending violated the JP Court's mandatory injunction not to remove the items subject to replevin.[42] Assuming Callahan is correct, the issue becomes what court has the power to vindicate the civil contempt threatened by the injunction.

10 *Del. C.* § 9506, the statutory authority from which the replevin injunction arises, confers that power to the Justice of Peace: "A *justice of the peace* shall have the power to punish. . ."[43] Callahan has pointed the Court to no authority that would confer jurisdiction on CCP to issue a civil contempt for violation of a JP Court Order.

Certainly, had CCP refused to stay execution of the JP Court replevin order, Callahan would have a stronger argument that Nelson was in violation of a CCP

---

[40] *DiSabatino v. Salicete*, 671 A.2d 1344, 1348 (Del. 1996) (holding all Delaware courts have broad, inherent contempt powers).

[41] *Davidson v. Robbins*, No. 2000 WL 33958583, at *2 (Del. Com. Pl. July 25, 2000) ("The right to take an appeal from a "judgment" of a justice of the peace and the manner or mode of review on appeal are fixed by statute.").

[42] The injunction issued here tracked the language of 10 Del. C. §9506 and stated: "You are hereby ordered not to intentionally destroy, damage, sell or conceal the property in question. A violation of this Order could result in Civil Contempt judgment being issued against you, in accordance with 10 *Del. C.* § 9506."[42]

[43] 10 *Del. C.* § 9506.

ruling and subject to contempt. But that is all "woulda, coulda, shoulda." It is not what happened.

Whether the Justice of the Peace Courts retained jurisdiction to vindicate its injunction (despite the appeal) via a civil contempt against Nelson is an interesting question that exceeds scope of the parties' pleadings and is thus not before the Court. What is before the Court is this: Callahan did not seek interlocutory review of CCP's rulings on sanctions or a stay. Once CCP decided the merits of joint ownership of the dog, questions of stays and injunctions became moot. Callahan did not succeed in getting CCP to conclude that she had an exclusive right to ownership of the dog. Those findings will not be reversed here.

## CONCLUSION

For all of the foregoing reasons, the rulings of the Court of Common Pleas are **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Charles E. Butler
**Charles E. Butler, Resident Judge**

12