In re Clifford Ivan PEGRAM, Debtor.

Jeremy J. Gugino, Chapter 7 Trustee, Plaintiff,

v.

James Knezevich and Ted Knezevich, Defendants.

Bankruptcy No. 08–00057–JDP.
Adversary No. 08–6027.

United States Bankruptcy Court, D. Idaho.

Sept. 3, 2008.

Jeremy J. Gugino, Boise, ID, Chapter 7 Trustee.

James Knezevich, Caldwell, ID, acting pro se.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

### Introduction

On January 12, 2008, Debtor Clifford Pegram ("Debtor") filed a petition for relief under chapter 7[1] of the Bankruptcy

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

Code. In connection with that case, the chapter 7 trustee, Jeremy J. Gugino ("Trustee"), commenced this adversary proceeding on March 11, 2008, to recover a 2006 Polaris ATV from Defendant James Knezevich ("Defendant"), alleging that the ATV was property of Debtor's bankruptcy estate. *See* Complaint, Docket No. 1. Acting on his own behalf, Defendant filed an answer disputing Trustee's claim, and explaining that he had purchased the ATV in good faith from Debtor prior to the commencement of his bankruptcy case. *See* Answer to Complaint, Docket No. 3.[2]

On June 12, 2008, Trustee moved for summary judgment. Docket No. 19. Defendant filed a written response to the motion, Docket No. 21. The parties appeared at a hearing on August 13, 2008 to argue the motion. Having now considered the record, the parties' arguments, and the applicable law, this memorandum disposes of the motion.[3]

### Facts

The material facts are not disputed and can be easily summarized. In September 2006, Debtor purchased an ATV from High Mark Recreation, which he financed through IDADIV Credit Union ("IDADIV"). IDADIV was listed as a lienholder on the ATV's original certificate of title. On December 11, 2007, Debtor sold the ATV to Defendant for $4,544.55.[4] Debtor signed and gave Defendant a bill of sale; Defendant delivered a personal check to IDADIV and took possession of the ATV.

On December 26, 2007, IDADIV released its lien on the ATV and sent the certificate of title to Debtor. Debtor signed the "assignment" section on the title certificate and forwarded it to Defendant.[5] For his own reasons,[6] Defendant did not immediately act to have a new title certificate issued by the Idaho Transportation Department showing that he now owned the ATV. It was not until much later that Defendant sought to have a new title certificate issued, which was ultimately issued on February 20, 2008. The new title listed Defendant as the owner of the ATV, and Ted Knezevich as the lienholder.

Unfortunately for Defendant, prior to the time the new certificate of title was issued to Defendant, on January 12, 2008, Debtor filed his chapter 7 bankruptcy petition.[7] Debtor did not disclose the December 11, 2007 sale of the ATV to Defendant in his Statement of Financial Affairs. Curiously, though, Debtor listed the ATV among his assets, and IDADIV as a se-

---

2. After Defendant answered the complaint, Trustee moved to join Ted Knezevich, the current lien holder on the ATV, as an indispensable party to the action. The Court granted the motion, and Trustee filed his amended complaint which added Ted Knezevich as an additional defendant. Docket No. 10.

3. To the extent required by the Rules, this Memorandum constitutes the Court's findings of fact and conclusions of law.

4. At the hearing, Defendant represented that he borrowed the money to purchase the ATV from his brother, Ted Knezevich, who is the other named defendant in the adversary proceeding. Ted Knezevich did not appear in this action and has been defaulted.

5. The precise date Defendant actually received the title certificate from Debtor is unclear. However, Defendant represented during the hearing that he received it sometime in January 2008, after Debtor's bankruptcy filing.

6. At the hearing, Defendant mentioned that his brother had recently suffered some serious medical problems, and that Defendant became preoccupied with assisting his brother and his family, such that the thought of titling the ATV did not enter his mind.

7. The case was assigned Case No. 08–00057–JDP.

cured creditor, in his bankruptcy schedules.

In this adversary proceeding, Trustee seeks to avoid Defendant's claim as owner of, as well as Ted Knezevich's lien interest in, the ATV. Trustee seeks possession of the ATV so it can be sold for the benefit of the creditors of the bankruptcy estate.

## Discussion

### I.

Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e), incorporated by Fed. R. Bankr.P. 7056; *Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 81 (Bankr.D.Idaho 2003) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir.2001)). The Court does not weigh evidence in resolving such motions; rather it determines only whether a material factual dispute remains for trial. *Lane*, 302 B.R. at 81 (citing *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.1997)). A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party. A fact is "material" if it might affect the outcome of the case. *Id.* (citing *Far Out Prods.*, 247 F.3d at 992). The initial burden of showing that there is no genuine issue of material fact rests on the moving party. *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr.D.Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998)). If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

### II.

#### A.

When an individual files a bankruptcy petition, a separate bankruptcy estate is created which is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The scope of the estate is extremely broad, including both tangible and intangible property. *Whiting Pools*, 462 U.S. at 205, 103 S.Ct. 2309. However, its scope is not so broad as to "expand a debtor's rights in property over what existed as of the date of filing." *Farmers Ins. Group v. Krommenhoek (In re Hiatt)*, 2000 WL 33712218, 00.3 I.B.C.R. 131, 132 (Bankr.D.Idaho 2000) (citations omitted).

"Property interests [in bankruptcy cases] are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Title 49 of the Idaho Code governs ownership rights in motor vehicles. In particular, Idaho Code § 49–503 provides that "no person acquiring a vehicle from the owner, whether the owner is a dealer or otherwise, shall acquire any right, title, claim or interest in or to the vehicle until he has issued to him a certificate of title to that vehicle[.]" This provision has been strictly construed by the courts to promote the underlying legislative policy that vehicle ownership be determined exclusively by reference to the name on the certificate of title. *Hopkins v. Brasseaux (In re Saunders)*, 2008 WL 538443, 08.1 I.B.C.R. 16, 17 (Bankr.D.Idaho 2008) (citing Idaho cases).

For example, this Court explained that a party has "no cognizable ownership interest in a vehicle where no certificate of title [has] yet been issued in

that party's name." *Hopkins v. Shradley (In re Shradley)*, 03.1 I.B.C.R. 7, 8 (Bankr.D.Idaho 2003). In other words, "it is the issuance of a new certificate of title, not delivery of the old certificate to a transferee, that grants an enforceable interest in a vehicle." *Saunders*, 2008 WL 538443, 08.1 I.B.C.R. at 17. Thus, "[a] buyer therefore bears the burden of acquiring a certificate of title in his name to protect his interest in a vehicle." *In re Woods*, 386 B.R. 758, 762 (Bankr.D.Idaho 2008).

■ When Defendant purchased the ATV from Debtor he thought he did everything correctly: he obtained a bill of sale from Debtor, he paid the prior lien holder in full, and he took possession of the ATV. Unfortunately, though, Defendant neglected a crucial step by not promptly obtaining a new certificate of title. Because Defendant delayed on this important step in establishing his legal rights, when Debtor filed for bankruptcy on January 12, 2008, in the public records, Debtor remained as the record title owner of the ATV and, as a result, the vehicle became property of the bankruptcy estate by operation of § 541(a)(1). *See, e.g., Woods*, 386 B.R. at 762; *Saunders*, 2008 WL 538443, 08.1 I.B.C.R. at 17; *Shradley*, 03.1 I.B.C.R. at 8–9.

Defendant's written submissions in this proceeding point out that neither Defendant nor Debtor had intended to "defraud the court or sidestep any laws." *See* Docket No. 3 at ¶ 12. Indeed, it appears that Defendant simply misunderstood or did not realize all that was required to effectively transfer ownership of the ATV under state law. However, Defendant's motives are not the issue in this action, and though sympathetic to Defendant's predicament, the Court cannot alter its legal analysis simply because the parties' intentions were innocent and the consequences harsh. *See Saunders*, 2008 WL 538443, 08.1 I.B.C.R. at 17 (explaining that the Idaho legislature has statutorily defined the equities in this context by adopting a comprehensive system of registering ownership interests in titled vehicles, and that it is inappropriate for a court to make "judicial exceptions to the operation of [that] thoughtful scheme."). The ATV is property of the bankruptcy estate which Defendant must turn over to Trustee. *See* 11 U.S.C. § 542(a).

### B.

■ In addition to obtaining turnover of the ATV, Trustee seeks to avoid any ownership or lien interests that Defendant and Ted Knezevich may have in the ATV pursuant to § 549(a)[8] as unauthorized post-petition transfers of estate property. The key factor in this inquiry is when the transfer of the ATV and the creation of Ted Knezevich's lien[9] actually occurred. Although the purchase transaction actually took place prior to the filing of Debtor's bankruptcy petition, a "transfer" for purposes of the Bankruptcy Code did not occur until a new certificate of title was issued by the State of Idaho listing Defendant as the owner of the ATV and Ted Knezevich as the lien holder. *See*

---

8. Section 549(a) provides:
  (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
  (1) that occurs after the commencement of the case; and
  (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

  (B) that is not authorized under this title or by the court.

9. The Bankruptcy Code broadly defines "transfer" to include the creation of a lien on property. 11 U.S.C. § 101(54)(A).

*Shradley,* 03.1 I.B.C.R. at 10 (explaining that a transfer occurs for bankruptcy purposes when the state issues a new certificate of title). Because this did not occur until February 20, 2008, after Debtor filed his bankruptcy petition, the Court concludes that the transfer of title and the lien constitute unauthorized post-petition transfers that the Trustee may avoid under § 549(a).

## Conclusion

Trustee's motion for summary judgment will be granted by separate order. Defendant's ownership interest in the ATV, as well as Ted Knezevich's lien, will be avoided pursuant to § 549(a), and Defendant will be ordered to turn over possession of the ATV to Trustee. Trustee shall submit an appropriate form of judgment for entry by the Court.

**In re Joseph H. ROSSANA, and Jo Ann Rossana, Debtors.**

Joseph H. Rossana, and Jo Ann Rossana, Plaintiffs,

v.

**John Joseph Momot, Defendant.**

Bankruptcy No. BK–S–92–25221–BAM.
Adversary No. 99–2128–BAM.

United States Bankruptcy Court, D. Nevada.

Aug. 19, 2008.

Neil J. Beller, William L. Mcgimsey, Las Vegas, NV, for Plaintiffs/Defendant.

**OPINION SANCTIONING NEIL J. BELLER AND REFERRING MATTER TO NEVADA OFFICE OF BAR COUNSEL**

BRUCE A. MARKELL, Bankruptcy Judge.

**I. Introduction**

Representing John Momot (Momot), attorney Neil Beller (Beller) moved to set

1. Although Joseph Rossana is deceased, this court uses "Rossanas" in the plural because Joseph Rossana's estate may have succeeded to his rights under the judgment and may have an interest in protecting those rights.

aside a judgment. This was problematic because Beller represents the holders of the judgment, and represented them in execution proceedings on that judgment against Momot. This opinion deals with the consequences of this dual representation.

**II. Facts**

This matter began with the sale of a bar more than twenty years ago. In 1987, Momot sued Joseph Smith and Smith's brother-in-law, Joseph Rossana (Joe), in Nevada state court. Momot contended that he was entitled to a share of the proceeds of the sale of the Rum Runner Tavern; Smith and Joe disagreed. Beller represented Joe.

Momot ultimately won, and obtained a judgment of $225,779. He sought to execute on Joe's property to satisfy that judgment. Joe responded to these collection efforts in ways that were neither mild nor legal. In 1994, he was convicted of aggravated stalking of Momot, of malicious destruction of Momot's property, and of discharging a firearm from a motor vehicle at Momot's home. Although some of the convictions were later overturned, he served two years in prison for these crimes. Beller represented Joe in the criminal case as well.

While this activity was sorting itself out, Joe and his wife, Jo Ann Rossana (Jo Ann), filed bankruptcy. Beller was substituted as counsel for both Jo Ann and Joe (collectively, the Rossanas [1]) in their bankruptcy in 1994. On May 7, 1999, on behalf of the Rossanas, Beller filed a complaint

There is some confusion in the spelling of the debtors in this case. On their petition and on their discharge, the names are Joseph Rossana and Jo Ann Rossana. The complaint in this adversary proceeding contains the

against Momot in bankruptcy court, alleging that Momot had executed on too much property when collecting on the $225,779 judgment. After trial (of which more later), the bankruptcy court agreed. On September 11, 2003, the court entered judgment in the approximate amount of $28,559 against Momot. In December of 2003, Beller garnished Momot's bank account to collect this amount. Some time after the garnishment, Joe and Jo Ann divorced. Joe later died.

There were irregularities in Momot's defense of the adversary proceeding. Momot's then-attorney testified in this proceeding that even though he entered an appearance and filed an answer for Momot, he failed to tell Momot that the adversary proceeding had started. He testified further that he did not inform Momot about the trial or that a judgment had been entered against him. This sequence of events is even stranger than it sounds: Momot is an actively practicing lawyer.

Momot testified that he first learned of the judgment when his bank account was garnished in 2003. He also testified that in the fall of 2004, he and Beller had a chance meeting, and Momot commented on the execution against his bank account. Beller and Momot both testified that at this chance encounter they discussed the trial and the fact that Momot had not attended. Momot testified that he then asked if Beller could do anything to remove the judgment. Momot testified that he was not specifically retaining Beller and that he was just discussing how to "administratively remove" the judgment.

Nothing further happened until October 29, 2007, approximately three years after

the initial conversation between Beller and Momot. On that date, Beller filed a "Motion for Relief From Judgment" on behalf of Momot in this court. Although Momot testified that he did not recall reviewing the motion, Momot signed an affidavit included with it. Further, Beller stated in another affidavit included with that motion that "[f]or the purposes of this Motion for Relief from Judgment, I am counsel of record for John Momot, Esq." Later in the same affidavit, Beller made the statement "[a]s attorney for Plaintiffs/Debtors in the above entitled action."

Beller did not withdraw and has not withdrawn from his representation of the Rossanas. When asked whether he still represented the Rossanas, he replied that Joe was dead and that the matter was closed. Beller testified further that he filed the motion for Momot as "a courtesy. It is an accommodation from one lawyer to another." When asked if he had contacted Jo Ann before filing the Motion for Relief From Judgment, he replied that he had not. He did testify that he contacted her in December 2007, to which she replied in an email stating that she was out of town, that she wanted the case number, and that they could discuss it when she returned to Las Vegas. When asked why he did not contact her before he filed the motion, Beller said, "Other than the fact that, I mean, Joe [Joseph Rossana] was old-school, Italian. I don't want to get . . ., but, but, she was always a behind-the-scenes person from the criminal matter to the bankruptcy matter. She was just there, and . . . I didn't really think about it."

On December 20, 2007, this court issued its "Order to Show Cause Why Neil J.

same spellings. Beller, however, in his pleadings for Momot, subtracts an "s" and adds an "n" to their last names, i.e., "Rosanna" instead of "Rossana", and spells Ms. Rossana's

name "Joanne" instead of "Jo Ann." This opinion will use the names on the petition, the discharge and the complaint, and will ignore Beller's variations.